**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI (Jefferson City)**

| | |
|---|---|
| In Re: NATHAN PAUL REUTER, | Case No. 07-21128-DRD-7 |
| Debtor. | Chapter 7 |
| JILL D. OLSEN, | |
| Plaintiff, | |
| vs. | Adversary Proceeding No. 12-02028-DRD |
| NATHAN PAUL REUTER and | |
| KATHLEEN S. REUTER, | |
| Defendants. | |

---

**CHAPTER 7 TRUSTEE'S SUGGESTIONS IN OPPOSITION
TO KATHLEEN REUTER'S MOTION TO DISMISS WITH PREJUDICE**

---

Kathleen Reuter ("Kathy") has filed a Motion to Dismiss and Suggestions in Support (Doc #21 and #22; collectively, the "Motion"). Kathy challenges the Court's subject matter jurisdiction over Count I (a declaratory judgment claim) and contends that no relief can be granted on Counts II and III (turnover and accounting claims). For the reasons explained below, the Motion should be denied.

### I.   APPLICABLE LEGAL STANDARDS

The Bankruptcy Rules adopt the standards of the Federal Rules of Civil Procedure on requirements for pleading and grounds for dismissal. *See* Bankruptcy Rules 7008(a) and 7012 ("Rule 8 F.R.Civ.P. applies in adversary proceedings"; "Rule 12(b)—(i) F.R.Civ.P. applies in adversary proceedings").

## A.  REQUIREMENTS FOR PLEADING

A pleading must contain a short and plain statement of the claim showing that the

pleader is entitled to relief. FRCP 8(a)(2). When challenged, a complaint must be liberally

construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801,

806 (8th Cir.2008). When deciding a motion to dismiss, the court "generally must ignore

materials outside the pleadings, but it may consider some materials that are part of the public

record or do not contradict the complaint, as well as materials that are necessarily embraced by

the pleadings." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## B.  GROUNDS FOR DISMISSAL

Judicial review of a pleading is a "context-specific task that requires the reviewing court

to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129

S. Ct. 1938, 1949, 173 L. Ed. 2d 868 (2009). The court must ignore conclusions in the pleadings

and assume the truth of all factual allegations. *Id.* at 678-79. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Id. at*  678-79.

## II.  JUDICIAL NOTICE

## A.  KATHY'S REQUEST FOR JUDICIAL NOTICE

Kathy asks the Court to take judicial notice of certain facts that appear in the public

record of the main bankruptcy case and a related adversary proceeding (SIS[1] p. 6). To the

extent that these facts are undisputed or "background" facts, the Chapter 7 Trustee does not

---

[1] Kathy's Motion to Dismiss is cited as "Mot" and her Suggestions in Support as "SIS."

object. The Chapter 7 Trustee does, however, object to judicial notice of the nature and extent

of the assets of the Nathan P. Reuter Revocable Trust because this "fact" is disputed and will

remain disputed until the Chapter 7 Trustee receives the accounting sought on Count III of the

Complaint.

**B.   THE CHAPTER 7 TRUSTEE REQUESTS JUDICIAL NOTICE OF THE INTERSPOUSAL AGREEMENT**

Pursuant to Mo. Rev. Stat. § 456.1-103(27), the "terms of a trust" are "the manifestation

of the settlor's intent regarding a trust's provisions as expressed in the trust instrument or as

may be established by other evidence that would be admissible in a judicial proceeding." The

official comments to the Uniform Trust Code[2] explain that "Oral statements, the situation of the

beneficiaries, the purposes of the trust, the circumstances under which the trust is to be

administered, and, to the extent the settlor was otherwise silent, rules of construction, all may

have a bearing on determining a trust's meaning." Unif. Trust Code § 456.1-103, comments; *see*

4C Mo. Prac., Trust Code & Law Manual § 456.1-103 (2012 ed.).

---

[2] Comments accompanying a uniform code when adopted have great weight in construing the code. *Matter of Nocita*, 914 S.W.2d 358, 359 (Mo. 1996). Missouri courts construe the Missouri Uniform Trust Code in light of the official comments to the Uniform Trust Code (on which the Missouri Uniform Trust Code is based) and the drafters' comments to the Missouri Code as enacted. *See, e.g., Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon*, 231 S.W.3d 158, 169 (Mo. Ct. App. 2007); *In re Stephen M. Gunther Revocable Living Trust*, 350 S.W.3d 44, 46 (Mo. Ct. App. 2011).

In the present case, the public record of the main bankruptcy case includes a post-nuptial agreement (the "Interspousal Agreement"; Doc #218, Exhibit A[3]) that was executed by Debtor and Kathy contemporaneous with the creation of the Kathleen S. Reuter Revocable Trust and the Nathan P. Reuter Revocable Trust (the "Disputed Trusts"). The Interspousal Agreement expressly references the Disputed Trusts, explains the reason for their creation, and (as more fully argued below) reserves certain property interests to Debtor. Pursuant to § 456.1-103(27), the Interspousal Agreement contains terms of the Disputed Trusts.

Because the property interests that Debtor contributed to the Disputed Trusts cannot be ascertained without reference to the Interspousal Agreement, it is necessarily embraced by the Complaint and by Kathy's Motion to Dismiss. The Chapter 7 Trustee asks the Court to take judicial notice of the Interspousal Agreement, a copy of which is attached to the present suggestions as *Exhibit A*.

### III. COUNT I

Kathy challenges the Court's subject matter jurisdiction to adjudicate Count I of the Complaint (SIS pp. 25-26). Count I seeks a declaratory judgment concerning the estate's rights in the Disputed Trusts.

---

[3] The Interspousal Agreement is also contained within Defendant's Exhibit 109 from the trial of the confirmation of Debtor's Chapter 11 plan, and it is discussed at length in the Court's Memorandum Opinion denying plan confirmation (Doc #159, pp. 61, 74-78).

## A.  KATHY HAS CONSENTED TO SUBJECT MATTER JURISDICTION

A litigant may consent to the jurisdiction of the bankruptcy court. *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 785 (8th Cir. 1987). When a litigant affirmatively places an issue before the bankruptcy court, the litigant consents to the court's subject matter jurisdiction. *Matter of Brown*, 26 B.R. 119, 121 (Bankr. W.D. Mo. 1983). Such consent "bestows subject-matter jurisdiction on the bankruptcy court [even] when such subject-matter jurisdiction would not otherwise exist." *Matter of Kakolewski*, 29 B.R. 572, 573 (Bankr. W.D. Mo. 1983).

In the main bankruptcy case, on October 13, 2010, Kathy appeared sua sponte and filed a motion "with respect to the estate's rights, if any, in the Kathleen S. Reuter Revocable Trust" (Doc #206). Kathy averred that the motion was a core proceeding within this Court's jurisdiction (Doc. #206, ¶ 1). Kathy thereby affirmatively consented to this Court's subject matter jurisdiction to determine the estate's rights in the Kathleen S. Reuter Revocable Trust, and she has waived any right to challenge such jurisdiction.[4]

## B.  STANDARD OF REVIEW

Because Kathy does not challenge the factual truthfulness of the Complaint, all of the factual allegations concerning jurisdiction are presumed to be true, and the Court must determine whether the Chapter 7 Trustee has failed to allege an element necessary for subject matter jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993); *see also Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731–32 (11th Cir.1982).

---

[4] In an abundance of caution, the Chapter 7 Trustee will nevertheless brief the merits of Kathy's jurisdictional challenge.

## C.  SUBJECT MATTER JURISDICTION FOR DECLARATORY JUDGMENT

In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C.A. § 2201 (the "Declaratory Judgment Act"). Because the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts, the controversy on which the declaration is sought must otherwise be within the subject matter jurisdiction of the court. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72, 70 S. Ct. 876, 879, 94 L. Ed. 1194 (1950).

A bankruptcy court has subject matter jurisdiction to enter a declaratory judgment to settle any controversy regarding the administration of a pending bankruptcy estate. *Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962, 964 (8th Cir. 1999). This standard is met if the declaratory judgment "could conceivably have *any* effect on the estate being administered in bankruptcy," including when the dispute to be resolved concerns the property of the estate. *In re Titan Energy, Inc.*, 837 F.2d 325, 329-30 (8th Cir. 1988)(emphasis added).

A bankruptcy court also has in rem jurisdiction over the bankruptcy estate from the moment the petition is filed. *See Straton v. New*, 283 U.S. 318, 321, 51 S. Ct. 465, 466, 75 L. Ed. 1060 (1931). A bankruptcy court's jurisdiction to deal with the property of the estate is exclusive. *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 737, 51 S. Ct. 270, 271, 75 L. Ed. 645 (1931).

## D.  THE PRESENT CONTROVERSY

### 1.  The Existence of the Controversy Is Not Genuinely Disputable

The controversy whether the Disputed Trusts may be liquidated in a Chapter 7

bankruptcy was first recognized by the Court in a Memorandum Opinion in the underlying

bankruptcy case (Complaint ¶ 28). The Court left resolution of the controversy "for another

day, if the case is converted to a Chapter 7" (Complaint ¶ 28). After conversion, the Court

entered a docket order requiring that the controversy be "handled with Adversary Proceeding"

(Complaint ¶ 39). The present action is that adversary proceeding. It would be unfair to all

interested parties (other than the Debtor and Kathy) if the Court were to dismiss this

proceeding without resolving the controversy that it purposely "left" for this day and instructed

the Chapter 7 Trustee to present in this manner.

Furthermore, because the Court has repeatedly recognized the controversy, and

because Kathy does not deny or controvert the allegations in the Complaint pleading the

existence of the controversy (*see* Doc #1, Complaint ¶¶28-42), there is no genuine dispute that

the controversy exists.

### 2.  History of the Controversy

The controversy became ripe when, after conversion, Debtor failed and refused to turn

over his rights and interests in the Disputed Trusts (*see* Complaint ¶ 33). Eventually, Debtor

claimed an exemption for these rights and interests pursuant to 11 USC § 541(c)(2) and

provisions of the Missouri Uniform Trust Code that restrict the transfer of interests in trusts

(Doc #197; *see also* Complaint ¶¶ 30-32). The tort creditors objected, arguing that the

restrictions on transfer cited by Debtor are not enforceable in relation to the Disputed Trusts

- 7 -

(Doc #221 at 6-24) and that Debtor is concealing the nature and value of his interests in the

Disputed Trusts (Doc #221 at 2-4). The Court expressly deferred resolution of these issues (*see*

Doc #241), leaving the tort creditor's objections pending and the underlying controversy

immediate and real (*see* Doc #241).

The controversy intensified when Kathy disclosed that she had revoked (purportedly)

the Kathleen S. Reuter Revocable Trust and had taken exclusive possession of the trust's assets

(Complaint ¶ 35). Kathy then informed the Court that the Chapter 7 Trustee "may not reach"

the assets of the Kathleen S. Reuter Revocable Trust (Complaint ¶ 36). Kathy continues to press

this argument in the present Motion (*see, e.g.*, Mot ¶¶ 20, 21, 23; SIS pp. 7-22 and 27).

As a result of the foregoing, and as previously recognized by the Court, a substantial

controversy exists:

> (A)    The Chapter 7 Trustee contends that Debtor has interests in, and powers
> over, the Disputed Trusts; that such interests and powers are property of the
> Estate; and that Defendants must turn over such property to the Chapter 7
> Trustee immediately; whereas
>
> (B)    Defendants contend that the Estate may not reach the assets of the
> Disputed Trusts.

(Complaint ¶ 40).  The Chapter 7 Trustee would have liquidated and distributed Debtor's

interests in the Disputed Trusts long ago, but for this unresolved controversy (*see* Complaint ¶¶

34 and 38).

It is obvious that the present controversy concerns the administration of Debtor's

pending bankruptcy estate, that it concerns the property of the estate, and that it will have a

significant effect on the estate. Under the authorities cited above, this places Count I squarely within the subject matter jurisdiction of the Court.

## E.  KATHY'S CONCLUSORY ARGUMENT

Kathy does not dispute that she and the Debtor are currently resisting and contesting the Chapter 7 Trustee's authority to collect, reduce to cash, and distribute Debtor's interests in the Disputed Trusts (*see* Complaint ¶ 43) or that until this controversy is resolved, the underlying bankruptcy cannot proceed to closure (*see* Complaint ¶ 40).

Instead, Kathy suggests that the controversy is not "actual" for jurisdictional purposes because "the Complaint fails to raise a reasonable inference that the [Chapter 7] Trustee is entitled to an order compelling Kathy to turnover [sic] the Assets or the policies in the Insurance Trust under § 542(a)" (SIS p. 26). Kathy does not explain how or why it is a necessary element for subject matter jurisdiction under the Declaratory Judgment Act that the Chapter 7 Trustee have a meritorious § 542(a) claim, and none of cases that she cites refer to § 542(a), turnover, or the administration of a bankruptcy case. The Chapter 7 Trustee is aware of no authority that supports Kathy's conclusory statement.

Kathy's implication that the Court's jurisdiction over Count I depends on the merits of the turnover action on Count II is clearly erroneous. Although Count I and Count II seek similar relief in the alternative,[5] subject matter jurisdiction on Count I is independent of the merits of Count II. The Declaratory Judgment Act places an independent "remedial arrow" in a federal

---

[5] Declaratory relief is alternative relief. *Fed. R. Civ. P. 57 advisory committee's note*.

court's quiver. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d

214 (1995). The Act expressly affords a prevailing party the remedy of "[f]urther necessary or

proper relief" by way of 28 U.S.C. § 2202. It is this independent equitable remedy that the

Chapter 7 Trustee seeks on Count I. Because Count I states a claim under the Declaratory

Judgment Act and seeks turnover as "further relief" under 28 U.S.C. § 2202, Kathy's argument

concerning § 542(a) relief is a red herring.

Furthermore, it is beyond dispute that the Court has rem jurisdiction over Debtor's

bankruptcy estate and exclusive jurisdiction to determine the property of the estate. *See*

*Straton, supra; see also Isaacs, supra.* The Federal Declaratory Judgment Act provides a

procedural remedy that can be implemented when jurisdiction is otherwise present. *See Skelly*

*Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Because the

court has jurisdiction to determine the property of the estate, the Declaratory Judgment Act

provides this Court with a procedural remedy that it can use to achieve this end.

## F.  CONCLUSION AS TO COUNT I

The parties to this proceeding have adverse legal interests, and the resulting

controversy whether the Chapter 7 Trustee may liquidate some or all of the approximately $1.5

million in the Disputed Trusts is substantial, immediate, and real. *See Marine Equip. Mgmt. Co.*

*v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). Moreover, the ability of the Chapter 7 Trustee

to liquidate the Disputed Trusts concerns the administration of Debtor's bankruptcy estate, and

the Court's declaration of rights will determine the property of the estate. For these reasons,

and for the other reasons discussed above, the Court has subject matter jurisdiction to

adjudicate Count I, and Kathy's conclusory assertion to the contrary provides no basis for

dismissal.

## IV.  COUNT II AS TO THE NATHAN P. REUTER REVOCABLE TRUST

Kathy contends that Count II (turnover) fails to state a cognizable claim in relation to the

Nathan P. Reuter Revocable Trust  because the Court has ruled that certain insurance policies

owned by the trust are exempt (SIS p. 25). In fact, the Court granted an exemption for three

term life policies and one whole life policy owned by the trust. However, lacking the accounting

of the trust that is sought on Count III, neither the Chapter 7 Trustee nor the Court can know

whether the Nathan P. Reuter Revocable Trust also contains non-exempt property subject to

turnover on Count II. Kathy's suggestion that this trust contains only the exempt insurance

policies is outside the pleadings.

Furthermore, in light of Debtor's history of bad faith in the main bankruptcy case, and in

light of his general history of fraud, until the Chapter 7 Trustee receives an accounting of the

Nathan P. Reuter Revocable Trust, the nature and extent of the trust property must be

considered a disputed fact, and therefore it is not properly considered by the Court in ruling on

a motion to dismiss. *See Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 832 (8th Cir. 2003).

## V.  COUNT II AND COUNT III AS TO BOTH DISPUTED TRUSTS

Kathy contends that Count II (turnover) and Count III (accounting) fail to state a

cognizable claim for numerous reasons identical to both counts (SIS pp. 6-45). The Chapter 7

Trustee need not refute each of Kathy's arguments, or any of them; to survive dismissal, the

Chapter 7 Trustee need only show that Counts II and III are plausible based on the allegations in

the Complaint. *See Iqbal*, 556 U.S. 678-79.

- 11 -

## A.  ON THEIR FACE, COUNT II AND COUNT III ARE PLAUSIBLE

### 1.  Turnover

Section 542(a) "requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205–06, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The drafters of § 542(a) made it clear that the turnover obligation applies to any property of the bankruptcy estate by specifically referencing to § 363. *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 427 (8th Cir.2007). The bankruptcy estate includes all legal or equitable interests of the debtor in property as of the commencement of the case, including those powers that the debtor may exercise for his own benefit. 11 U.S.C. § 541(a)(1), (b)(1). Any interest which a debtor retains in a trust is property of the estate. *See Askanase v. LivingWell*, Inc., 45 F.3d 103, 106 (5th Cir. 1995); *In re Gifford*, 93 B.R. 636, 640 (Bankr. N.D. Ind. 1988).

Debtor previously filed a Chapter 11 plan, to which the Court denied confirmation in part because Debtor failed to include the Disputed Trusts in the plan (*see* Doc #159, pp. 70-80). In its analysis of the best interest of the creditors, the Court expressly determined that, "There is no question that Debtor has a contingent beneficial interest in the Trust which is property of the estate and for which no recovery or avoidance is necessary" (Doc #159, p. 79). Such a contingent interest is a valuable interest that is alienable and subject to seizure under executions. *See State ex rel. Cooper v. Cloyd*, 461 S.W.2d 833, 838-39 (Mo. 1971).

Furthermore, Debtor also has rights as a trustee of the Disputed Trusts. These legal rights are subject to turnover in addition to Debtor's beneficial interest. *See* 11 U.S.C. §

541(a)(1), (b)(1); *see also Askanase v. LivingWell*, Inc., 45 F.3d 103, 106 (5th Cir. 1995); *In re Gifford*, 93 B.R. 636, 640 (Bankr. N.D. Ind. 1988).

Pursuant to the authorities cited above, Debtor's undisputed interests as a beneficiary and as a trustee are property of the estate subject to turnover on Count II, and therefore Count II states a turnover claim that is plausible and that has already been determined by this Court to have merit as to certain interests in the Disputed Trusts. Whether the turnover claim can reach additional interests is beyond the scope of a motion to dismiss. Because the Chapter 7 Trustee has pleaded a turnover claim on Count II that is both plausible and meritorious, Count II states a cognizable claim, and Kathy's arguments attempting to limit the property subject to the claim should be deferred until after she has answered Count II and the parties have had an opportunity to conduct discovery.

### 2.  Accounting

Section 542 is more than a mere provision for turnover. It also provides that an entity in possession of estate property shall "account for" such property or the value of such property. 11 U.S.C. § 542(a); *see, e.g., In re Dean*, 107 F.3d 579, 581 (8th Cir. 1997); *see also In re Borchert*, 143 B.R. 917, 919 (Bankr. D.N.D. 1992).  Because the Chapter 7 Trustee has pleaded a cognizable § 542 turnover claim, she is also entitled to an accounting of the relevant property, as requested on Count III. Kathy's arguments attempting to limit the property subject to the accounting should be deferred until after she has answered Count III and the parties have had an opportunity to conduct discovery.

- 13 -

**B.   THE CHAPTER 7 TRUSTEE HAS A NONFRIVOLOUS ARGUMENT TO EXTEND EXISTING LAW**

Chapter 7 is intended to give "the truly needy a fresh start and not to give those who can afford to meet their obligations a head start." *In re Smith*, 269 B.R. 686, 692 (Bankr. W.D. Mo. 2001). A debtor who attempted to shield almost his entire net worth of $700,000 "did not want a mere fresh start, he wanted a head start." *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 876 (8th Cir. 1988). This "goes well beyond the purpose for which exemptions are permitted." *Id.* Debtor's actions in the present case are not meaningfully different.

Permitting Debtor to exclude substantially all of his $1.5 million in assets (approximate) from bankruptcy liquidation, while retaining the full enjoyment of those assets through the Disputed Trusts (including building a new luxury home while in bankruptcy, starting two new businesses outside the control of the Chapter 7 Trustee, and paying all of his living expenses and liabilities—except to his bankruptcy creditors), undeniably frustrates the purpose and spirit of the bankruptcy code. The policy of enlarging the bankruptcy estate to the maximum extent allowable under the Code is of paramount importance because only then will creditors receive the distribution that they are entitled to under the Code. *In re Swanson*, 873 F.2d 1121, 1124 (8th Cir. 1989). In the present case, Debtor is not truly needy and seeks a head start, rather than a fresh start, by manipulating the size of his bankruptcy estate using trusts that the Chapter 7 Trustee contends are "alter ego" trusts.  *See, e.g., United States v. Scherping*, 187 F.3d 796, 803 (8th Cir. 1999)(piercing trust that was alter ego of taxpayer).

Although there is no Missouri law applying the alter ego doctrine to trusts, at least one federal district court in Missouri assumes that if the alter ego of a trust "so dominated it that

- 14 -

the trust had no separate mind, will or existence of its own," then under Missouri law the trust

would be pierced in the same manner as a corporation. *See Dean v. United States*, 987 F. Supp.

1160, 1165 (W.D. Mo. 1997).

Whether the Disputed Trusts are the alter ego of Debtor is a factual question raised in

the Complaint, which alleges that, "Both before and after the filing of the underlying

bankruptcy, Debtor exercised rights as a trustee under the Nathan Reuter Trust in his sole

discretion for his benefit" (Complaint ¶ 26). Kathy's arguments for dismissal, which are based

on the terms of the Disputed Trusts, have no application if the Disputed Trusts are pierced,

particularly because Mo. Rev. Stat. § 456.1-105.2(13) provides that the terms of a trust may not

alter "the power of the court to take such action and exercise such jurisdiction as may be

necessary in the interests of justice."

As a result, if the Court finds it plausible that the Disputed Trusts could be pierced under

Missouri law or that the equitable purposes of the bankruptcy code could otherwise require the

Disputed Trusts to be set aside, then Counts II and III should not be dismissed, based on the

terms of the Disputed Trusts or otherwise. Although this would arguably amount to an

extension of the alter ego doctrine or the establishment of new bankruptcy law, the Chapter 7

Trustee is entitled to seek a change in the law. *See* Rule FRCP 12(b)(2).

## C.  KATHY'S ARGUMENT FAILS CONCERNING DEBTOR'S RIGHT TO REVOKE

Kathy contends that the express provisions of the Kathleen S. Reuter Revocable Trust

(the "Trust") contradict the allegation in the Complaint that Debtor has the right to revoke the

Trust (SIS p. 8-9). Specifically, Kathy asserts that Article X.B of the Trust Agreement

"unequivocally recites that Kathy has the exclusive right to both amend and revoke the Trust"

(SIS p. 8).[6] This misstates Article X.B, which grants Kathy an express power to revoke the Trust

Agreement, but which does not qualify this power as "exclusive." Furthermore, as argued

below, Article X.B does not destroy or supplant Debtor's concurrent power to revoke the Trust

pursuant to Mo. Rev. Stat. § 456.6-602.

### 1.  Debtor Has a Statutory Power to Revoke

The Missouri Uniform Trust Code has an express provision governing the revocation of

revocable trusts (the "MUTC Revocation Provision"; Mo. Rev. Stat. § 456.6-602). Various

methods of revocation are authorized depending on the circumstances of settlement and the

kinds of property contributed to the trust. These methods include: (i) by substantially

complying with any method provided in the terms of the trust; *or* (ii) if the terms of the trust do

not provide a method, by any other method manifesting clear and convincing evidence of the

settlor's intent; *or* (iii) if the trust was created or funded by more than one settlor, to the extent

the trust consists of community property, by either spouse acting alone; *or* (iv) to the extent the

trust consists of property other than community property, by each settlor with regard to the

portion of the trust property attributable to that settlor's contribution. *See* Mo. Rev. Stat. §

456.6-602.

Under the facts of the present case, in which Debtor and Kathy jointly funded the Trust

with marital property, two of the statutorily-authorized methods are clearly available: by

substantially complying with any method provided in the terms of the trust; or by either spouse

---

[6] A copy of the Kathleen S. Reuter Trust Agreement is attached to this document as *Exhibit B*.

acting alone. Kathy confines her argument to the first method and ignores the second. The second method is created by the following statutory language:

> If a revocable trust is created or funded by more than one settlor. . . to the extent the trust consists of community property, the trust may be revoked by either spouse acting alone. . . .

Mo. Rev. Stat. § 456.6-602.2(1).

The result is obvious. Because the Disputed Trusts were jointly created and funded by Debtor and Kathy, Debtor has the power, acting alone, to revoke the Disputed Trusts to the extent that they contain community property. This power is property of the bankruptcy estate. *See, e.g., In re Mack*, 269 B.R. 392, 411 (Bankr. D. Minn. 2001); *see also* 11 U.S.C. § 110; *see also* 5 Collier on Bankruptcy 541.11(2) (15th ed. 2007).

### 2. Debtor's Statutory Power to Revoke Has Not Been Varied By Agreement

Pursuant to Mo. Rev. Stat. § 400.1-102(3), the effect of the MUTC Revocation Provision "may be varied by agreement." In the present case, there is no evidence that Debtor agreed to forfeit his statutory power to revoke the trust to the extent it contains "community property." To the contrary, the Interspousal Agreement demonstrates that it was Debtor's intent to preserve this power. *See* Exhibit A, ¶ D.

Furthermore, the intention to preserve in Kathy and Debtor the limited statutory power to revoke community property is well-harmonized with Kathy's broader power of revocation under the Trust Agreement, which applies to "the instrument in whole." When read in light of the Missouri Uniform Trust Code and the Interspousal Agreement, the obvious intent and effect of Article X.B is to clarify that to the extent the Trust contains non-community property not

contributed by Kathy or Debtor (as to which the Trust cannot be revoked pursuant to § 456.6-

602.2), the Trust may be revoked by Kathy. Without this clarification, there would be an

ambiguity how to revoke the trust as to property contributed by third parties because the

MUTC Revocation Provision does not address this point. The inclusion of a general, catch-all

revocation power in Kathy as to the trust "in whole or in part" in no way supersedes the specific

the MUTC Revocation Provisions that apply when spouses fund a revocable trust with marital

property.

When the MUTC Revocation provision is given effect (as it must be), the Kathleen S.

Reuter Revocable Trust is subject to revocation by several methods:

> (1)     Kathy may revoke the trust "in whole" pursuant to Article X.B of the trust
> agreement, which is effective via § 456.6-602.3(1);
>
> (2)     Kathy may revoke the trust pursuant to § 456.6-602.2(1) to the extent
> the trust consists of community property;
>
> (3)     Kathy may revoke the trust pursuant to § 456.6-602.2(2) with regard to
> any contribution attributable to Kathy that is not community property.
>
> (4)     Debtor may revoke the trust pursuant to § 456.6-602.2(1) to the extent
> the trust consists of community property; and
>
> (5)     Debtor may revoke the trust pursuant to § 456.6-602.2(2) with regard to
> any contribution attributable to Debtor that is not community property.

Accordingly, Debtor has an express statutory power to revoke the Disputed Trusts, and Kathy's

power under the Trust Agreement supplements but does not supplant this power.

Furthermore, Kathy's power to revoke is subject to the automatic stay, and it is subject

the Chapter 7 Trustee's power as trustee (in the shoes of Debtor) to make a discretionary

distribution of the property from the Disputed Trusts to the bankruptcy estate (*see* Art. II §  A).

- 18 -

### 3.   Debtor is a Settlor and Has the Powers of a Settlor

Kathy attempts to avoid the conclusion that Debtor has a right to revoke the Kathleen S. Reuter Revocable Trust under the MUTC Revocation Provision by arguing that Debtor is not a settlor of the Trust (SIS p. 10). Kathy makes this argument notwithstanding that Debtor and Kathy jointly contributed all of the property in the Trust pursuant to an Interspousal Agreement that recites that they have both agreed that the Trust be created and funded using "our assets, investments, and real and personal property." *See Exhibit A*, ¶ C. Kathy's argument that Debtor has no right to revoke the Trust fails because Debtor is a settlor and has the rights of a settlor, as shown below.

### 4.   Debtor Has the Rights of a Settlor

The Missouri Uniform Trust Code grants Debtor "the rights of a settlor" because Debtor has a presently exercisable power to withdraw assets from the trust without the consent of the trustee or any other person. *See* Mo. Rev. Stat. § 456.6-603.4 (granting rights of a settlor) and § 456.1-103(16)(defining "power of withdrawal"). The Interspousal Agreement implicitly gives Debtor the rights of a settlor when it reserves to Debtor the power to withdraw marital assets by filing for divorce.

The clear purpose of the Interspousal Agreement is to allow Debtor to contribute marital property to the Kathleen S. Reuter Revocable Trust and then, in the event of a divorce, withdraw those assets from the trust so that the assets may be divided as marital property. As a result, Debtor has a presently exercisable power to withdraw assets from the trust without the consent of the trustee or any other person; this gives Debtor a statutory "power of withdrawal." *See* § 456.1-103(16). Because Debtor can presently exercise this power by

divorcing Kathy, Debtor has the rights of a settlor to the extent of the martial property in the

Trust. *See* §456.6-603.4. This negates Kathy's argument that Debtor is not a settlor of the Trust.

Additionally, Debtor's right to distribute the Trust by divorcing Kathy supports the

allegation in the Complaint that Debtor has the right to revoke the Trust (*see* SIS p. 8-9). This

right is analogous to the right of an employee to distribute a retirement trust upon termination

of employment, which is the subject of a well-reasoned line of bankruptcy decisions which,

although they no longer govern retirement trusts in Missouri due to a 1992 statutory

amendment, still govern the analysis of a beneficiary's dominion and control over trust

distributions for bankruptcy purposes. *See, e.g.*, *In re Swanson*, 873 F.2d 1121, 1124 (8th

Cir.1989); *In re Brown*, 130 B.R. 304, 309 (Bankr. E.D. Mo. 1991); *In re Davis*, 125 B.R. 242, 245

(Bankr.W.D. Mo.1991); *In re Schmitt*, 113 B.R. 1007, 1012 (Bankr.W.D.Mo.1990); *Berman v.*

*Mead (In re Mead)*, 110 B.R. 434, 440 (Bankr.W.D.Mo.1990); *In re Gallagher*, 101 B.R. 594, 600

(Bankr.W.D.Mo.1989).

In the retirement trust cases, it was common for the retirement trust to terminate upon

the debtor's separation from employment. This afforded the debtor an ability to determine

when the retirement trust terminated, by voluntarily separating from employment. *See, e.g.,  In*

*re Taylor, supra*. Even in cases where separation from employment gave the debtor a limited

right to control the trust assets that did not include a cash settlement, any ability to control the

trust assets by separating from employment was deemed significant. *See, e.g., In re Enfield,*

*supra*.

For the present analysis, the salient aspect of the retirement trust cases is that a debtor's ability to gain *any* measure of control over the assets of a trust by separating from employment is a power to which the bankruptcy trustee succeeds. *In re Schmitt*, at 1013. This is true although the bankruptcy trustee has no power to terminate the Debtor's employment relationship and regardless whether the debtor remains employed. *Id.* If the Debtor can absolutely obtain the proceeds at any time by terminating employment, then the bankruptcy trustee succeeds to an absolute right to compel distribution and may compel payment of the debtor's full interest into the estate. *Id.* at 1014.

In the present case, Debtor has an analogous power to determine when the Kathleen S. Reuter Revocable Trust terminates by filing for divorce. Unlike many of the retirement cases, in which the debtor's power was limited, Debtor has an absolute and unlimited right to obtain possession of Trust assets through a divorce. Following the logic of the retirement trust cases, Debtor's right to possession succeeds to the Chapter 7 Trustee regardless whether Debtor and Kathy actually divorce, and as a result the Chapter 7 Trustee may compel payment of Debtor's full interest into the estate.

### 5. Circular Provisions of the MUTC Regarding a Settlor

Kathy's argument that Debtor is not a settlor fails because Kathy misuses circular provisions of the MUTC to argue that Debtor is not a "settlor" for the purposes of Mo. Rev. Stat. § 456.6-602.2 (SIS p. 10). As shown below, Kathy's argument relies on one definition to provide content to another definition, and therefore it explains nothing. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).

- 21 -

According to Kathy's argument, the key phrase in § 456.6-602.2 is the qualifier, "If a revocable trust is created or funded by more than one settlor." Kathy's purpose is to make herself the sole settlor of the Kathleen S. Reuter Revocable Trust and to deny settlor status to Debtor. The Chapter 7 Trustee admits that logically, if Debtor is not a settlor, then he has no power to revoke under § 456.6-602.2.[7] Kathy argues that Debtor is not a settlor because when more than one person contributes property to a trust, although the statutory definition of "settlor" includes each person who contributes property, the definition excludes a contributor of property "to the extent another person has the power to revoke or withdraw that portion pursuant to the terms of the trust." (SIS p. 11, *citing* Mo. Rev. Stat. § 456.1-103(23). There are two problems with this argument.

First, the argument presumes that only Kathy has the power to revoke the Trust. As shown above, this is a false premise because § 456.6-602.2 empowers Debtor to revoke the Trust and because Debtor may revoke the Trust by divorcing Kathy. To avoid the statutory right (but not the divorce right), Kathy invokes a circular definition. Whether Debtor has the power to revoke under § 456.6-602.2 depends on whether he is a settlor. Whether Debtor is a settlor, however, depends on whether he has the power to revoke. Mo. Rev. Stat. § 456.1-103(23). This of course, depends on whether he is a settlor, and the analysis regresses ad infinitum.

---

[7] Debtor would, however, still have the rights of a settlor because Debtor can withdraw assets from the Trust by divorcing Kathy (*see argument above*).

The circularity has another aspect. Section 456.6-602.2 only applies to "revocable" trusts. The statutory definition of "revocable" requires a determination whether the settlor has the legal power to revoke the trust. Mo. Rev. Stat. § 456.1-103(22). This in turn depends on whether § 456.6-602.2 applies to the Trust, which depends on the original question whether the Trust is revocable. This is an another infinite regression.

Relying on one definition to provide content to another definition is "completely circular and explains nothing." *Nationwide Mut. Ins. Co.*, 503 U.S. at 323; *see also Clackamas Gastroenterology Associates, P. C. v. Wells*, 538 U.S. 440, 444, 123 S. Ct. 1673, 1677, 155 L. Ed. 2d 615 (2003). A court must resolve this quandary by adopting the relevant common law definition. *Nationwide Mut. Ins. Co.*, 503 U.S. at 323; *see also Wilde v. County of Kandiyohi*, 15 F.3d 103, 105 (8th Cir. 1994)(refusing to "imply a meaning that is broader than the common-law definition").

The common law definition of settlor is "[a] person who makes a settlement of property; [especially] one who sets up a trust." Black's Law Dictionary 1378 (7th ed.1999). When applied to the present argument, this definition produces a result that comports with common sense: both Debtor and Kathy are settlors of the Disputed Trusts.

In a similar situation, Justice Stevens has suggested that, "the proper course of action is to widen the interpretive lens and look to the rest of the statute for clarity." *Carcieri v. Salazar*, 555 U.S. 379, 410, 129 S. Ct. 1058, 1076, 172 L. Ed. 2d 791 (2009)(Stevens, J., dissenting). Looking at the statute as a whole, one finds that under normal circumstances, the relevant definitions function without circularity because ordinarily a settlor is simply a person "who

creates, or contributes property to, a trust." Mo. Rev. Stat. § 456.1-103(23). In circumstances

were more than one person funds the trust, the intent of the statute is explained by the

comments to the Uniform Trust Code:

> Determining the identity of the "settlor" is usually not an issue. The same person will both sign the trust instrument and fund the trust. Ascertaining the identity of the settlor becomes more difficult when more than one person signs the trust instrument or funds the trust. The fact that a person is designated as the "settlor" by the terms of the trust is not necessarily determinative. . . . Should more than one person contribute to a trust, all of the contributors will ordinarily be treated as settlors in proportion to their respective contributions, regardless of which one signed the trust instrument.

Unif. Trust Code § 456.1-103, comments; *see* 4C Mo. Prac., Trust Code & Law Manual § 456.1-

103 (2012 ed.)(emphasis added).

The above-quoted comments to the Uniform Trust Code make clear that the fact that

only Kathy signed the Kathleen S. Reuter Revocable Trust Agreement is not determinative

whether Debtor is a settlor, and because Debtor also contributed to the Trust, Debtor *is* a

settler in proportion to his contribution. This is harmonious with the MUTC Revocation

Provision, which allows joint settlors who are not married to revoke "with regard to the portion

of the trust property attributable to that settlor's contribution" and married settlors to revoke

to the extent the trust consists of community property. *See* Mo. Rev. Stat. § 456.6-602.2.

Looking again at the statute as a whole, one finds that the phrase that throws the

definitions into a circle (the "Exclusionary Phrase") is this one: "If more than one person creates

or contributes property to a trust, each person is a settlor of the portion of the trust property

attributable to that person's contribution except to the extent another person has the power to

revoke or withdraw that portion pursuant to the terms of the trust." *Id.*

The comments to the Uniform Trust Code explain that the Exclusionary Phrase was intended to apply to a trust used as a will substitute in which gifts are contributed to the trust:

> In the case of a revocable trust employed as a will substitute, gifts to the trust's creator are sometimes made by placing the gifted property directly into the trust. To recognize that such a donor is not intended to be treated as a settlor, the definition of "settlor" excludes a contributor to a trust that is revocable by another person or over which another person has a power of withdrawal. Thus, a parent who contributes to a child's revocable trust would not be treated as one of the trust's settlors.

*See* 4C Mo. Prac., Trust Code & Law Manual § 456.1-103 (2012 ed.).

In the present case, the Interspousal Agreement is conclusive evidence that Debtor did not intend to make a gift to Kathy. *Exhibit A* , § D.3 ("It is not intended by us that the transfer of property to the Trusts or rather of the Trusts shall constitute a gift by one of us to the other of us. . . . "). As a result, the manner in which the Disputed Trusts were settled is not a circumstance to which the Exclusionary Phrase was intended to a apply.

Every reasonable resolution or harmonization of the circular definition that Kathy attempts to exploit defeats her argument because it is the manifest intent of the Missouri Uniform Trust Code that a husband and wife who contribute community property to a trust both be settlors of the trust, regardless of who signs the trust agreement. Kathy's attempt to make herself the sole settlor of a trust funded with marital property exploits ambiguous definitions in the statute and relies not on the intent of the statute but on a circular definition that "explains nothing." *See Nationwide Mut. Ins. Co.*, *supra.* Because Debtor is also a settlor of the Kathleen S. Reuter Revocable Trust, the Complaint is legally correct to allege that Debtor has the right to revoke the Trust, for the many reasons argued above.

**D.  KATHY'S ARGUMENT FAILS CONCERNING SPENDTHRIFT VALIDITY**

Kathy contends that the Disputed Trusts contain valid spendthrift provisions (SIS 9-12). This issue is, however, irrelevant in the present context because, "[w]hether or not the terms of a trust contain a spendthrift provision, during the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors." Mo.Rev.Stat. 456.5-505.  As shown above, the Disputed Trusts are revocable, Debtor is a settlor of the Disputed Trusts, and Debtor has the rights of a settlor as to the Disputed Trusts. Consequently, during Debtor's lifetime, the property of the Disputed Trusts is subject to the claims of Debtor's creditors. This renders moot Kathy's argument concerning the validity of the spendthrift provisions.

**E.  KATHY'S ARGUMENT FAILS CONCERNING DEBTOR'S ALLEGEDLY REMOTE INTEREST**

Kathy contends that Debtor's interest in the Disputed Trusts is "too remote" to be property of the estate because it is "subject to complete divestiture by Kathy at any time and at her discretion" (SIS p. 21). This is not true. If Kathy were to attempt to divest Debtor of his interests in the Disputed Trusts, pursuant the Interspousal Agreement Debtor can thwart the divestiture and regain his interest by divorcing Kathy. Providing a remedy for a non-consensual divestiture by Kathy is one of the obvious purposes of the Interspousal Agreement.

It is reasonably inferred from the Interspousal Agreement that Debtor did not intend to irreovocably transfer control over approximately $1.5 million of marital property to Kathy against his interest to maintain control over the property in the event of a divorce. Rather, Debtor passed only nominal control to Kathy, as his co-trustee, to apply the property for his "reasonable comfort, best interests, and welfare" and with a duty to administer the Trust for Debtor's benefit pursuant to Mo. Rev. Stat. 456.6-603.3("If a revocable trust has more than one

settlor, the duties of the trustee are owed to all of the settlors having capacity to revoke the

trust"). Pursuant to the Interspousal Agreement, if Kathy deadlocks a request for a distribution

by Debtor, Debtor may divorce Kathy and recover his share of the Trust property.

Debtor's interest in the Trust, described above, is not a remote interest at all. To the

contrary, Debtor is entitled to unlimited distributions, even to the point of exhausting the Trust

property. *Exhibit A*, Article II,§ A. The Trust Agreement requires that Kathy "shall" make such

distributions. *Id.* Moreover, Debtor has the practical power to coerce Kathy to make

distributions under the threat of divorce, and if Kathy refuses, Debtor can absolutely recover his

contributions from the Trust by divorcing Kathy. This is nothing at all like the remote interests in

the out-of-circuit cases relied upon by Kathy.

## F.  KATHY'S ARGUMENT FAILS CONCERNING LEGAL TITLE

Kathy contends that Debtor's only enforceable interest in the Disputed Trusts is "his

bare legal interest as a co-trustee" (SIS p. 22-23). To the contrary, Debtor holds more than bare

legal title. His legal interest includes the right to make a discretionary distribution of the entire

trust res to himself as beneficiary.  As such, Debtor holds complete title, legal and beneficial, to

the trust assets which can be distributed to the bankruptcy estate by the Chapter 7 Trustee

exercising those rights for the benefit of the creditors of the estate for the benefit of the

Debtor.

Furthermore, the provision upon which Kathy relies is intended to protect the secondary

mortgage market, where debtor as seller retains legal title of documents only, by authorizing a

court to recognize the division of legal and equitable interests in and to mortgages, provided

that transaction is true mortgage participation and trustee will then hold note and deed subject

to outstanding and superior equitable interests of beneficiaries. *In re Sprint Mortgage Bankers*,

164 B.R. 224 (E.D.N.Y. 1994). This is not the situation presented by the Disputed Trusts.

## G.  KATHY'S ARGUMENT FAILS CONCERNING ADEQUATE PROTECTION

Kathy contends that Count II is "defective" because she has received no adequate

protection for her purported power to divest the Disputed Trusts (SIS 23-24). As shown above,

this power is ineffective and illusory, and therefore there is nothing to protect. Furthermore, in

this circuit, adequate protection is a question of fact. *In re Martin*, 761 F.2d 472, 474 (8th Cir.

1985). As a result, it is not a proper ground for dismissal on the pleadings. Moreover, in the

absence of a demand by the creditor or voluntary payment by debtor (neither of which has

occurred in this case), the Court may not fashion adequate protection arrangements. *In re*

*Prime, Inc.*, 37 B.R. 897, 899 (Bankr. W.D. Mo. 1984). Finally, the concept of adequate

protection was designed to "insure that the secured creditor receives the value for which he

bargained." *Id.* In any given case, the bankruptcy court must necessarily (1) establish the value

of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting

from the debtor's request for use of cash collateral, and (3) determine whether the debtor's

adequate protection proposal protects value as nearly as possible against risks to that value

consistent with the concept of indubitable equivalence. *Id.* It is not apparent how this

requirement applies to Kathy, and her argument that she must receive adequate protection for

her power to divest the Disputed Trusts (SIS p. 24) is novel, misplaced, and unsupported by

precedent.

The crux of Kathy's argument is that turnover will expose Kathy to a risk of revocation against which she is entitled to protection. This presumes that Kathy is not currently exposed to a revocation by Debtor and that turnover would upset the status quo. As demonstrated above, this is not the case because Kathy has at all times been exposed to a loss of Trust assets in a divorce. Kathy is entitled to no special protection from this risk merely because the Chapter 7 Trustee has succeeded to Debtor's longstanding powers.

## VI.  CONCLUSION

For the foregoing reasons, Kathy's Motion to Dismiss should be denied. In the event that the Court grants the Motion, the Chapter 7 Trustee requests that the Court simultaneously grant the Chapter 7 Trustee leave to amend the Complaint as follows:

A.     By attaching and incorporating by reference the Interspousal Agreement.

B.     By adding the following, additional allegations:

(1)     Kathy consented to the jurisdiction of the bankruptcy court when she appeared in the main bankruptcy case on October 13, 2010 and filed a motion "with respect to the estate's rights, if any, in the Kathleen S. Reuter Revocable Trust" (Doc #206).

(2)     Debtor has a statutory power to revoke the Disputed Trusts pursuant to Mo. Rev. Stat. § 456.6-602.

(3)     Debtor has the rights of a settlor of the Disputed Trusts pursuant to Mo. Rev. Stat. § 456.6-603.4.

(4)     Debtor has a right to distribute Disputed Trusts by divorcing Kathy

pursuant to the Interspousal Agreement.

(5)     Kathy has no protectable interest in Debtor's interest in the

Disputed Trusts.

(6)     The Interspousal Agreement contains terms of the Disputed

Trusts.

C.     By such other or further amendment as may be required to respond to

the Court's order of dismissal.

Respectfully submitted,

 /s/ David G. Brown
David G. Brown   MO #42559
Brown Law Office LC
501 Cherry Street, Suite 100
Columbia, MO 65201
(573) 814-2375
(800) 906-6199 FAX
dbrown@brown-lawoffice.com
*Attorney For Chapter 7 Trustee*

**CERTIFICATE OF SERVICE:**  I hereby certify that on November 1, 2012, a copy of the above was served upon all persons requesting electronic notification by filing it with the Court using the CM/ECF system.

 /s/ David G. Brown