**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI (Jefferson City)**

| | |
|---|---|
| In Re: NATHAN PAUL REUTER, | Case No. 07-21128-DRD-7 |
| Debtor. | Chapter 7 |
| JILL D. OLSEN,<br><br>                    Plaintiff,<br><br>    vs.<br><br>NATHAN PAUL REUTER and<br><br>KATHLEEN S. REUTER,<br><br>                    Defendants. | Adversary Proceeding No. 12-02028-DRD |

---

**CHAPTER 7 TRUSTEE'S SUGGESTIONS IN OPPOSITION**
**TO DEBTOR'S MOTION TO DISMISS WITH PREJUDICE**

---

Nathan Reuter ("Debtor") has filed a Motion to Dismiss and First Amended Suggestions in Support (Doc #24 and #27; collectively, the "Motion"). The Motion contends that the Court lacks authority to issue a declaratory judgment and raises various affirmative defenses to the Complaint. As shown more fully below, none of the issues raised by Debtor are appropriate for determination on a motion to dismiss under Rule 12, and none of Debtor's arguments have merit in any event.

**I.  LEGAL STANDARDS**

**A.  NOTICE PLEADING**

The Bankruptcy Rules adopt the standards of the Federal Rules of Civil Procedure on requirements for pleading. *See* Bankruptcy Rule 7008(a)("Rule 8 F.R.Civ.P. applies in adversary

1

proceedings"). A pleading must contain a short and plain statement of the claim showing that

the pleader is entitled to relief. FRCP 8(a)(2).

The Bankruptcy Rules also adopt the Federal Rules of Civil Procedure on grounds for

dismissal. *See* Bankruptcy Rule 7012 ("Rule 12(b)—(i) F.R.Civ.P. applies in adversary

proceedings"). When deciding a motion to dismiss, a complaint must be liberally construed in

the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th

Cir.2008). The court "generally must ignore materials outside the pleadings, but it may consider

some materials that are part of the public record or do not contradict the complaint, as well as

materials that are necessarily embraced by the pleadings." *Miller v. Redwood Toxicology Lab.,

Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## B.  SUBJECT-MATTER JURISDICTION

There are two types of adversary proceedings over which the bankruptcy court has

subject-matter jurisdiction: (1) core proceedings and (2) non-core, related proceedings.

*Abramowitz v. Palmer*, 999 F.2d 1274, 1277–78 (8th Cir.1993).  The test for determining

whether a non-core proceeding is sufficiently related to bankruptcy is whether the outcome of

the proceeding could conceivably have any effect on the estate being administered in

bankruptcy. *National City Bank v. Coopers & Lybrand*, 802 F.2d 990 (8th Cir. 1986). When

deciding a motion to dismiss for lack of subject-matter jurisdiction, the court "is limited to

determining whether the challenged pleadings set forth allegations sufficient to show the Court

that it has subject matter jurisdiction over the matter." *Id.*

## C.  FAILURE TO STATE A CLAIM

Judicial review of the sufficiency of a claim to relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1938, 1949, 173 L. Ed. 2d 868 (2009). The court must ignore conclusions in the pleadings and assume the truth of all factual allegations. *Id.* at 678-79. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id. at* 678-79.

## D.  AFFIRMATIVE DEFENSES

A defendant does not render a complaint defective by pleading an affirmative defense. *Jessie v. Potter*, 516 F.3d 709, 713 n. 2 (8th Cir. 2008). Whether a particular ground for opposing a claim may be the basis for dismissal depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract. *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007).  Under this standard a complaint may be subject to dismissal based on an affirmative defense only when the affirmative defense "appears on its face." *Id.*

## II.  REQUEST TO TAKE JUDICIAL NOTICE OF THE INTERSPOUSAL AGREEMENT

Pursuant to Mo. Rev. Stat. § 456.1-103(27), the "terms of a trust" are "the manifestation of the settlor's intent regarding a trust's provisions as expressed in the trust instrument or as may be established by other evidence that would be admissible in a judicial proceeding." The official comments to the Uniform Trust Code[1] explain that, "Oral statements, the situation of

---

[1] Missouri courts construe the Missouri Uniform Trust Code in light of the official comments to the Uniform Trust Code (on which the Missouri Uniform Trust Code is based) and the drafters' comments to the Missouri Code as enacted. *See, e.g., Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon*, 231 S.W.3d 158, 169 (Mo. Ct. App. 2007); *In re Stephen M. Gunther Revocable Living Trust*, 350 S.W.3d 44, 46 (Mo. Ct. App. 2011).

the beneficiaries, the purposes of the trust, the circumstances under which the trust is to be

administered, and, to the extent the settlor was otherwise silent, rules of construction, all may

have a bearing on determining a trust's meaning." Unif. Trust Code § 456.1-103, comments.[2]

In the present case, the public record of the main bankruptcy case includes a post-

nuptial agreement (the "Interspousal Agreement"; Doc #218, Exhibit A[3]) that was executed by

Debtor and Kathy contemporaneous with the creation of the Kathleen S. Reuter Revocable

Trust and the Nathan P. Reuter Revocable Trust (the "Disputed Trusts"). The Interspousal

Agreement expressly references the Disputed Trusts, explains the reason for their creation, and

(as more fully argued below) reserves to Debtor certain property interests and certain powers

over the assets of the Disputed Trusts. Pursuant to § 456.1-103(27), the Interspousal

Agreement contains terms of the Disputed Trusts.

Because Debtor's interests in the Disputed Trusts cannot be ascertained without

reference to the Interspousal Agreement, it is necessarily embraced by the Complaint and by

Debtor's Motion to Dismiss. Accordingly, the Chapter 7 Trustee asks the Court to take judicial

notice of the Interspousal Agreement, a copy of which is attached to the present suggestions as

*Exhibit A*.

---

[2] The official comments may be found at 4C Mo. Prac., Trust Code & Law Manual § 456.1-103 (2012 ed.).

[3] The Interspousal Agreement was also admitted in evidence at the confirmation trial of Debtor's Chapter 11 plan as a part of Defendant's Exhibit 109, and it is discussed at length in the Court's Memorandum Opinion denying confirmation (Doc #159, pp. 61, 74-78).

### III.  BANKRUPTCY COURTS MAY ISSUE DECLARATORY JUDGMENTS

*(This point responds to Debtor's Point I)*

In his first point, Debtor challenges the "authority" of this Court to adjudicate Count I, which is a declaratory judgment claim (SIS ¶¶ 1-29).[4] Debtor's argument does not allege any deficiency in the Complaint and does not dispute that this is a core proceeding within the Court's subject-matter jurisdiction (*see* Complaint ¶¶ 3, 5). Instead, Debtor argues that a recent U.S. Supreme Court decision has "destroyed" the authority of a bankruptcy court to declare the rights and legal relations of interested parties pursuant to the Declaratory Judgment Act (SIS ¶¶ 24-29).[5] Debtor's argument fails for the several reasons set forth below.

### A.  *SEARS, ROEBUCK & CO. V. O'BRIEN*

The Bankruptcy Reform Act gave bankruptcy courts expanded powers to issue declaratory judgments. *Celotex Corp. v. Edwards*, 514 U.S. 300, 328, 115 S. Ct. 1493, 1508, 131 L. Ed. 2d 403 (1995), *citing N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 55, 102 S. Ct. 2863, 73 L. Ed. 2d 598 (1982). A bankruptcy court may exercise this authority pursuant to the Bankruptcy Rules, which expressly provide that an adversary proceeding may be brought to obtain a declaratory judgment concerning the validity or extent of an interest in property. Fed. R. Bankr. P. 7001(9). The U.S. Supreme Court has affirmed declaratory judgments by bankruptcy courts. *See, e.g., Holywell Corp. v. Smith*, 503 U.S. 47, 112 S. Ct. 1021, 117 L. Ed. 2d 196 (1992).

In accordance with the authority cited above, it is settled law in this circuit that a bankruptcy court may enter a declaratory judgment to resolve any controversy regarding the

---

[4] Debtor's Motion to Dismiss is cited as "Mot" and his Suggestions in Support as "SIS."

[5] "In a case of actual controversy within its jurisdiction. . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C.A. § 2201.

administration of a pending bankruptcy estate. *Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962,

964 (8th Cir. 1999).

**B.  *STERN V. MARSHALL* DOES NOT CONCERN DECLARATORY JUDGMENTS**

Debtor acknowledges that he is seeking a ruling contrary to *Sears, supra.* (SIS ¶ 9).[6] The

case that Debtor relies upon is *Stern v. Marshall*, 131 S. Ct. 2594, 2611, 180 L. Ed. 2d 475 (2011)

reh'g denied, 132 S. Ct. 56, 180 L. Ed. 2d 924 (U.S. 2011). *Stern* does not, however, concern the

Declaratory Judgment Act or property of the estate; *Stern* concerns the authority of a

bankruptcy court to enter a final judgment on a creditor's state common law tort claim raised

as a counterclaim in an adversary proceeding. The relevant holding of *Stern* is this: "Congress

may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy

case; the question is whether the action at issue stems from the bankruptcy itself or would

necessarily be resolved in the claims allowance process." *Id.* at 2618. Because the *Stern*

creditor's counterclaim failed this test, the Court held that a federal district judge, not a

bankruptcy judge, would have to hear and resolve the counterclaim. *See Id.* at 2630.

*Stern* has no application to Count I of the present case, which is a declaratory judgment

action to determine the property of the estate. This is a uniquely federal issue under

substantive federal bankruptcy law, which must be resolved at the outset of every bankruptcy

case. There is no analogy at all to the state tort claim of the creditor in *Stern*.

Furthermore, *Stern* does not divest the bankruptcy court of jurisdiction, as Debtor

suggests; it merely addresses the issue whether the bankruptcy court's judgment is final or

---

[6] This Court is bound to follow *Sears* because it is the last controlling decision in this circuit. *See, e.g., Maude v. Gen. Motors Corp.*, 626 F. Supp. 1081, 1086 (W.D. Mo. 1986).

interlocutory. As a result, the relief available under *Stern* is not the dismissal with prejudice that

Debtor seeks but simply an opportunity for de novo review of in district court.

Finally, even if the *Stern* test is applied rather than the *Sears* test, the result remains the

same because the present declaratory judgment action "stems from" Debtor's bankruptcy in

that it arises from Debtor's claimed exemptions for the Disputed Trusts, Debtor's need to clarify

his duty to turn over rights and interests in the Disputed Trusts,[7] and the Chapter 7 Trustee's

need to clarify what property she may collect and reduce to money.[8] Put simply, outside the

confines of the present bankruptcy, the Chapter 7 Trustee has no dispute with Debtor and his

spouse, and absent this bankruptcy there would be no controversy about which to seek a

declaratory judgment. Thus the controversy stems from the bankruptcy and has no

independent life, rendering *Stern* completely inapposite.

## IV.  THE STATUTE OF LIMITATIONS HAS NOT RUN

*(This point responds to Debtor's Point II)*

In his second point, Debtor contends that the Chapter 7 Trustee's claims amount to a

"creatively-labeled" action to avoid fraudulent transfers into the Disputed Trusts which, if

allowed to proceed, will make a "mockery" of the statute of limitations for avoidance actions

(SIS ¶¶ 31, 36-39). This argument is a straw man that Debtor stands up and knocks down but

that has no relevance to this proceeding. As explained below, the relief sought by the Chapter 7

Trustee is the polar opposite of avoidance.

---

[7] *See* 11 USC § 521(a)(4).

[8] *See* 11 USC § 704(1)(a).

## A.   THE STATUTE OF LIMITATIONS IS AN AFFIRMATIVE DEFENSE

As a general rule, a statute of limitation provides an affirmative defense, which the defendant must plead and prove, and which has no bearing on whether the complaint is defective. *See, e.g., Jessie v. Potter*, 516 F.3d 709, 713 n. 2 (8th Cir.2008). "Thus, as a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011)(quotations removed). Dismissal is appropriate only when "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Metro. St. Louis Equal Hous. Opportunity Council v. Tillman*, 7-04114-CV-C-NKL, 2007 WL 3046585 (W.D. Mo. Oct. 16, 2007); *see also Sanders v. Dep't of Army*, 981 F.2d 990, 991 (8th Cir. 1992)(affirmative defense must clearly appear on the face of the complaint).

In the present case, as discussed more fully below, Debtor asks the Court to read into the Complaint an avoidance action that the Chapter 7 Trustee did not plead and then to impute the statute of limitations for the unpleaded action onto the Complaint. This is an affirmative defense that does not appear on the face of the Complaint, and therefore it presents no ground for dismissal.

## B.   THIS ACTION IS NOT A SURROGATE FOR AN ACTION TO AVOID FRAUDULENT TRANSFERS

Debtor's argument is wrong in any event because it rests on the false premise that the hidden object of this proceeding is to avoid the transactions that created and funded the Disputed Trusts (SIS ¶¶ 38-39). This is not so. The Chapter 7 Trustee joins Debtor in affirming the validity of the creation and funding of the Disputed Trusts and seeks the turnover of Debtor's resulting rights and interests. This is the opposite of avoiding the transactions that

created those rights and interests. Put simply, the Chapter 7 Trustee seeks to exercise Debtor's present powers over assets currently in the Disputed Trusts, not to avoid or recover past transactions that created and funded the Trusts. As the Court previously determined, these are interests "for which no recovery or avoidance is necessary" (Doc #159, p. 79).

Debtor's real complaint is that the Chapter 7 Trustee is on the verge of avoiding Debtor's asset protection scheme, which Debtor deployed in 2005 with the purpose to defraud his creditors (see Doc #159 p. 66). Debtor apparently believed that the protection of his assets was a fait accompli when the statute of limitations on avoidance actions arguably lapsed in 2009 (SIS ¶48).

The problem for Debtor is that (as more fully explained below) his asset protection scheme is flawed in that it affords him multiple "backdoor" rights and powers to control the assets in the Disputed Trusts, and these rights and powers now belong to the bankruptcy estate. As a result, the Chapter 7 Trustee, standing in Debtor's shoes, can recover funds from the Disputed Trusts and use the recovered funds to pay Debtor's creditors. Because Debtor's flawed asset protection scheme actually assists the Chapter 7 Trustee in reaching Debtor's assets, the Chapter 7 Trustee has no interest in avoiding the scheme, and she absolutely does not seek the relief of avoidance, as Debtor erroneously alleges (SIS ¶ 39). Because Debtor's argument rests on a false premise, the argument fails. The statute of limitations for avoidance actions is wholly irrelevant to the present proceeding.

## C.  DEBTOR MISCHARACTERIZES THE LAW

Although, as established above, the Chapter 7 Trustee does not seek avoidance relief in this proceeding, Debtor is wrong in arguing that the cases he cites bar her from doing so (see

SIS ¶¶ 31-35). Debtor has no case on point and has cobbled together a mishmash of partial quotes from disparate cases outside the Eighth Circuit to stand up the proposition that if there is a valid action to avoid a fraudulent transfer, when the statute of limitations for such action lapses, so does a Debtor's duty to surrender property of the bankruptcy estate that was fraudulently transferred.

A debtor's duty to surrender to the trustee "all property of the estate" arises under 11 USC § 521(a)(4), and there is no time limit on this duty. The Chapter 7 Trustee agrees with Debtor that the enforcement of this duty is an equitable matter analogous to seeking restitution (SIS ¶ 33). "Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief." *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S. Ct. 582, 584, 90 L. Ed. 743 (1946). Consequently, a debtor has an unbounded duty to turn over estate property, and although a bankruptcy trustee may file a complaint compelling the Debtor to do so, "there are no strict deadlines in the Bankruptcy Code or Rules mandating when the Trustee must take such action." *In re Johnson*, 371 B.R. 380, 387-88 (Bankr. E.D. Ark. 2007). Essentially, Debtor contends that he has cut off this statutory duty to surrender property of the estate, and that he has created an otherwise nonexistent deadline on turnover actions, by laundering property of the estate through a fraudulent transfer. This contention is absurd.

## D.  THERE IS NO STATUTE OF LIMITATIONS ON TURNOVER OR ACCOUNTING RELIEF

As noted above, a debtor's duty to surrender to the trustee "all property of the estate" arises under 11 USC § 521(a)(4), and there is no time limit on this duty. The duty to surrender to the trustee "any recorded information, including books, documents, records, and papers, relating to property of the estate" arises under  11 USC § 521(a)(4), and there is no time limit on

this duty, either. Because, as Debtor contends (SIS ¶ 33), turnover and accounting are equitable claims, statutes of limitations do not control these claims. *See Holmberg, supra*.

This precise issue was examined in *In re Johnson, supra*. In that case, the court held that a Debtor's obligation to surrender property of the estate to the bankruptcy trustee is "self-operative and mandatory" and that "[t]here is no requirement in the Code that the trustee make demand, obtain a court order, or take any further action in order to obtain a turnover of the estate's property." 371 B.R. at 387-88 (citations omitted).  Thus a debtor has an absolute statutory duty to turn over estate property, and although the trustee may file a complaint compelling a debtor to do so, "there are no strict deadlines in the Bankruptcy Code or Rules mandating when the Trustee must take such action." *Id.*

This precise issue was also raised in *In re Ollada*, 114 B.R. 654 (Bankr. E.D. Mo. 1990). In that case, the court held that the statute of limitations in § 546—which Debtor seeks to apply to Count II the present case (SIS ¶ 42)—does not apply to an action under § 542. *Id.* at 655. Because Count II in the present case is an action under § 542 (*see* Complaint ¶ 47), the § 546 statute of limitations does not apply in the present case, either.

Debtor has not cited or distinguished *Johnson* or *Ollada*, and he cites no case similarly on point that reaches any different result.

## E.   THERE IS NO STATUTE OF LIMITATIONS ON A DECLARATORY JUDGMENT CLAIM

Although a declaratory judgment (Count I) is a statutory remedy, a suit for declaratory judgment can nevertheless be "essentially an equitable cause of action." *Samuels v. Mackell*, 401 U.S. 66, 70, 91 S. Ct. 764, 766-67, 27 L. Ed. 2d 688 (1971). The Chapter 7 Trustee agrees

with Debtor that in this case, Count I is an equitable claim (*see* SIS ¶ 34). As such, it is not controlled by a statute of limitations. *See Holmberg, supra*.

Furthermore, even if Count I were not an equitable claim, because the Declaratory Judgment Act is silent as to a limitations period, as a legal claim it would be subject to the comparable statute of limitations from Missouri law. *See, e.g., Int'l Union, United Auto. Workers of America v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04, 86 S.Ct. 1107, 1111–13, 16 L.Ed.2d 192 (1966). In Missouri there is no statute of limitations expressly applicable to declaratory judgment actions. *See* 35 Mo. Prac., Cont., Eq. & Stat. Actions Handbook § 31:5 (2012 ed.). As a result, Missouri courts apply the default 10-year limitation for actions "not otherwise provided for." *See, e.g., Beavers v. Recreation Ass'n of Lake Shore Estates, Inc.*, 130 S.W.3d 702 (Mo. Ct. App. S.D. 2004), *citing* Mo. Rev. Stat. § 516.110(3). This limitation period "does not begin to run until an actual controversy has occurred." *Id.; see also Keiser v. Wiedmer*, 283 S.W.2d 914, 918 (Mo. Ct. App. 1955).

In the present case, the controversy that is the subject of Count I arose when the Chapter 7 Trustee was appointed on June 9, 2010 (see Doc # 176). On that date, Debtor became obligated to surrender to the trustee all property of the estate pursuant to 11 USC § 521(a)(4), and it was on that date that Debtor first failed to surrender to the Chapter 7 Trustee: (i) the powers that he retains over the assets in the Disputed Trusts pursuant to the Interspousal Agreement, (ii) his powers as a settlor of the Disputed Trusts pursuant to the Missouri Uniform Trust Code, (iii) his legal interests and powers as a trustee of the Disputed Trusts, and (iv) his beneficial interests in the Disputed Trusts.  If this Court treats Count I as a legal claim to which a statute of limitations applies, then the applicable 10-year period of limitations borrowed from

Missouri law does not lapse until June 9, 2020. Thus even if a statute of limitations is applicable, when the proper limitation is applied, Count I is not barred.

Finally, even if the Court adopts Debtor's argument that a declaratory judgment must be brought within the limitations period applicable to the substantive claim underlying the request for declaratory relief, as shown above there is no limitations period for the underlying turnover claim.

## V.  COUNT III IS GOVERNED BY THE BANKRUPTCY CODE, NOT BY STATE COMMON LAW

*(This point responds to Debtor's Point III)*

In his third point, Debtor contends that Count III (accounting) fails to state a claim under Missouri law (SIS ¶ 51). As authority for the erroneous proposition that Missouri law applies, Debtor cites *In re Vantage Investments, Inc.*, 385 B.R. 670, 705 (Bankr. W.D. Mo. 2008) (SIS ¶ 51). *Vantage Investments* is readily distinguished because it involved a debtor demanding an "equitable accounting" from a successful bidder at a foreclosure sale. The fact that the debtor in *Vantage Investments* elected to seek an accounting under state law has no relevance to Count III in the present case.

In Count III, the Chapter 7 Trustee seeks an accounting pursuant to 11 U.S.C. § 542 (Complaint ¶ 50). Obviously, such an accounting is governed by 11 U.S.C. § 542, not Missouri law. *See, e.g., In re Dean*, 107 F.3d 579, 581 (8th Cir. 1997)(trustee received turnover and an accounting pursuant to § 542). Section 542 requires that an entity account for property of the bankruptcy estate that is in its possession, custody, or control during the case. Debtor makes no argument that Count III fails to state a claim under this standard.

13

## VI.  THE NATHAN REUTER TRUST MAY CONTAIN NON-EXEMPT PROPERTY

*(This point responds to Debtor's Point IV)*

In his fourth point, Debtor contends that Count II (turnover) fails to state a cognizable claim in relation to the Nathan P. Reuter Revocable Trust  because the Court has ruled that certain insurance policies owned by the trust are exempt (SIS p. 25). In fact, the Court granted an exemption for three term life policies and one whole life policy owned by the trust. However, lacking the accounting of the trust that is sought on Count III, neither the Chapter 7 Trustee nor the Court can know whether the Nathan P. Reuter Revocable Trust also contains non-exempt property subject to turnover on Count II. Debtor's suggestion that this trust contains only the exempt insurance policies is outside the pleadings.

Furthermore, in light of Debtor's history of bad faith in the main bankruptcy case, and in light of his general history of fraud, until the Chapter 7 Trustee receives an accounting of the Nathan P. Reuter Revocable Trust, the nature and extent of the trust property must be considered a disputed fact, and therefore it is not properly considered by the Court in ruling on a motion to dismiss. *See Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 832 (8th Cir. 2003).

## VII. THE CHAPTER 7 TRUSTEE IS NOT SEEKING TO AVOID ANY TRANSFERS

*(This point responds to Debtor's Point V)*

In his fifth point, Debtor challenges the ability of the Chapter 7 Trustee to avoid certain transfers into the Disputed Trusts (see SIS ¶ 64). As shown above, this construction of the relief sought by the Chapter 7 Trustee states a false premise. The Chapter 7 Trustee seeks to exercise Debtor's present powers over assets currently in the Disputed Trusts, not to avoid or recover

past transactions that created and funded the Trusts. Debtor's Point V is based on a false

premise and has no relevance to the relief sought in this case.

### VIII.    THE 2011 AMENDMENT OF THE MISSOURI UNIFORM TRUST CODE DOES NOT APPLY

*(This point responds to Debtor's Point VI.A)*

In his sixth point, subsection A, Debtor contends that pursuant to a recent amendment

to the Missouri Uniform Trust Code (*see* Mo. Rev. Stat. § 456.950), the KR Trust is a "qualified

spousal trust" that cannot be reached by the Chapter 7 Trustee (SIS ¶¶ 70-80). This is an

affirmative defense that does not appear on the face of the Complaint, and thus it is not a

proper ground for dismissal. Furthermore, for the reasons explained below, the KR Trust is not

a qualified spousal trust, and § 456.950 cannot be retroactively applied to Debtor's bankruptcy

estate in any event.

### A.  THE KR TRUST IS NOT A "QUALIFIED SPOUSAL TRUST"

Section 456.950 expressly applies only to "trusts which fulfill the criteria set forth in this

section for a qualified spousal trust." Mo. Rev. Stat. § 456.950.7.  Thus the threshold question is

whether the KR Trust fulfills the statutory criteria. It does not.

#### 1.    The KR Trust Is Not Held In One Trust During the Joint Lives of Debtor and His Spouse

One criterion for a qualified spousal trust is that "[d]uring the joint lives of the settlors

all property or interests in property transferred to, or held by, the trustee are held and

administered in one trust for the benefit of both settlors. . . ." The KR Trust violates this

criterion because upon Kathy's death, the trust splits into two trusts, one for the benefit of

Debtor and one for the benefit of Kathy's descendants (*see* Art. IV § A; *see also* Art. V).[9] Because the KR Trust can split into two trusts during the joint lives of Debtor and Kathy, it is not a qualified spousal trust.

**2.   The KR Trust Is Not Administered for the Benefit of Debtor and Kathy for Their Joint Lives**

When the KR Trust splits into two trusts upon Kathy's death, Debtor will receive an amount in trust measured by the standard "the smallest pecuniary amount necessary to produce the least federal income tax payable" (*see* Art. IV § A). This violates the criterion that Debtor and Kathy must receive the benefit of *all* property and interests in property transferred to the KR Trust during their joint lives.

Furthermore, the remainder of the KR Trust property is transferred to a trust for the benefit of Kathy's descendants, and even while Debtor survives, the "primary concern" must be the health, support in reasonable comfort, and education of Kathy's descendants (*see* Art. V § C.1.(b)). This also violates the criterion that Debtor and Kathy must receive the benefit of *all* property and interests in property transferred to the KR Trust during their joint lives.

Moreover, during the joint lives of Debtor and Kathy, Kathy may direct the trustee to distribute KR Trust property to "others" in such amounts as Kathy may direct (*see* Art. II § B). This further violates the criterion that Debtor and Kathy must receive the benefit of *all* property and interests in property transferred to the KR Trust during their joint lives.

**3.   The KR Trust Is Not Revocable By Debtor After Kathy Dies**

Another criterion for a qualified spousal trust is that during the joint lives of the settlors the trust must be "revocable by either or both settlors acting together while either or both are

---

[9] A copy of the Kathleen S. Reuter Trust Agreement is attached to this document as *Exhibit B*.

alive." The KR Trust violates this criterion. Although Debtor has reserved a power under the

Interspousal Agreement to revoke by divorcing Kathy, once Kathy dies, this power lapses

because Debtor can no longer divorce Kathy. And so after Kathy dies, even while Debtor is still

living, Debtor has no power to revoke the KR Trust (*see* Art. X § B).

### 4. Debtor Has No Right to Receive Distributions From the Entire Trust After Kathy's Death

When the KR Trust splits into two trusts upon Kathy's death, Debtor will have no right to

receive distributions of income or principal from the portion of the trust allocated to Kathy's

descendants (*see* Art. V § A). This violates the criterion that Debtor must have the right to

receive distributions of income or principal "from the entire trust" for the joint lives of Debtor

and Kathy.

### B. THE PROPERTY OF THE BANKRUPTCY ESTATE WAS DETERMINED PRIOR TO THE AMENDMENT OF THE MISSOURI UNIFORM TRUST CODE

The filing of a bankruptcy petition creates an estate which is composed of all legal and

equitable interest of the debtor in property wherever located *as of the date the case is*

*commenced*. 4 Collier on Bankruptcy ¶ 541.01 (15th Ed.1984)(emphasis added); *In re Graham*,

726 F.2d 1268 (8th Cir.1984). The relevant moment for determining whether property

constitutes the bankruptcy estate is "as of the commencement of the case." 11 U.S.C. §

541(a)(1); *In re Nelson*, 322 F.3d 541, 544 (8th Cir. 2003). The rights of the creditors to which

the trustee succeeds are to be ascertained as of the date of bankruptcy, not at an anterior point

of time. *Cattle Owners Corp. v. Arkin*, 252 F. Supp. 34, 48 (S.D. Iowa 1966).

Accordingly, whatever interest Debtor had in the KR Trust on July 27, 2007 became, on

that date, property of the bankruptcy estate. This highlights an important distinction between a

change in law that retroactively applies to a trust created before the change in law, and a

change in law that retroactively "undoes" transactions that occurred to a trust before the

change in law. Although § 456.950 purports to apply to "trusts which fulfill the criteria set forth

in this section. . . regardless of whether such trust was created before or after August 28,

2011," the statute does not purport to rescind or revoke transactions that occurred before this

date. And so the amendment of § 456.950 was too late to prevent the determination and

creation of Debtor's bankruptcy estate on July 27, 2007. That is the date on which the relevant

rights and interests are measured and determined, not the anterior date when the Missouri

Uniform Trust Code was amended.

## C.   THE AMENDMENT OF THE MISSOURI UNIFORM TRUST CODE CANNOT BE APPLIED RETROSPECTIVELY

The Missouri Constitution prohibits laws that are retrospective in operation. Mo. Const.

Art. I, § 13. A law is retrospective in operation if it takes away or impairs vested or substantial

rights acquired under existing laws or imposes new obligations, duties, or disabilities with

respect to past transactions. *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338,

340 (Mo. banc 1993). Legislative intent to apply a law retroactively, no matter how clear,

"cannot supercede [sic] a constitutional provision." *Doe*, 862 S.W.2d at 341. To the extent that

there are reported decisions that may be read to suggest that legislative intent to apply a

statute retroactively creates an exception, these cases "misspeak." *Missouri Real Estate*

*Comm'n v. Rayford*, 307 S.W.3d 686, 698-99 (Mo. Ct. App. 2010).

"The constitutional inhibition against laws retrospective in operation ... does not mean

that no statute relating to past transactions can be constitutionally passed, but rather, that

none can be allowed to operate retrospectively so as to affect such past transactions to the

substantial prejudice of parties interested." *Missouri Real Estate Comm'n*, 307 S.W.3d at 689-91

(Mo. Ct. App. 2010). A "vested right" is defined as a "right complete and consummated, and of

such character that it cannot be divested without the consent of the person to whom it

belongs, and fixed or established, and no longer open to controversy." *Id., citing* Black's Law

Dictionary 1402 (5th ed.1979).

In the present case, Debtor's interest in the KR Trust vested in the bankruptcy estate on

July 27, 2007, when Debtor filed his bankruptcy petition, and the Chapter 7 Trustee succeeded

to this interest when she was appointed on June 9, 2010. The constitutional prohibition on

retrospective laws prevents the 2011 amendment of the Missouri Uniform Trust Code from

taking away or impairing the interests that Chapter 7 Trustee obtained prior to the amendment.

### IX.  THE KATHLEEN S. REUTER TRUST IS NOT IMMUNE FROM TURNOVER

*(This point responds to Debtor's Point VI.B)*

Debtor contends that the KR Trust is "immune" from turnover based on Debtor's

interpretation of various provisions of the Missouri Uniform Trust Code (the "MUTC"; SIS ¶¶ 81-

99). These arguments do not challenge the sufficiency or plausibility of the Complaint but

instead raise affirmative defenses that do not appear on the face of the Complaint. Accordingly,

these arguments provide no basis for dismissal. See *Jones*, *supra*. At this stage the Chapter 7

Trustee need not refute defenses that Debtor has yet to plead and prove; the Chapter 7 Trustee

need only show that turnover relief is plausible based on the allegations in the Complaint. *See*

*Iqbal*, *supra*. Notably, Debtor concedes the plausibility of one of the Chapter 7 Trustee's key

points, which is that Debtor is a "settlor" of the KR Trust.

## A.  THE ELEMENTS OF A TURNOVER CLAIM

Section 542(a) "requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205–06, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The drafters of § 542(a) made it clear that the turnover obligation applies to any property of the bankruptcy estate by specifically referencing to § 363. *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 427 (8th Cir.2007). The bankruptcy estate includes all legal or equitable interests of the debtor in property as of the commencement of the case, including those powers that the debtor may exercise for his own benefit. 11 U.S.C. § 541(a)(1), (b)(1). Any interest which a debtor retains in a trust is property of the estate. *See Askanase v. LivingWell, Inc.*, 45 F.3d 103, 106 (5th Cir. 1995); *In re Gifford*, 93 B.R. 636, 640 (Bankr. N.D. Ind. 1988).

## B.  DEBTOR'S INTERESTS IN THE KR TRUST ARE SUBJECT TO TURNOVER

Debtor previously filed a Chapter 11 plan, as to which the Court denied confirmation, in part because Debtor failed to include the KR Trust in the plan (see Doc #159, pp. 70-80). In its analysis of the best interests of the creditors, the Court expressly determined that, "There is no question that Debtor has a contingent beneficial interest in the Trust which is property of the estate and for which no recovery or avoidance is necessary" (Doc #159, p. 79). Such a contingent interest is a valuable interest that is alienable and subject to seizure under executions. *See State ex rel. Cooper v. Cloyd*, 461 S.W.2d 833, 838-39 (Mo. 1971).

Debtor's contingent beneficial interest in the KR Trust has already been determined to be property of the estate subject to turnover, and therefore Count II states a turnover claim

that is both plausible and meritorious. Whether Debtor has defenses that may prevent the turnover claim from reaching additional interests is beyond the scope of a motion to dismiss.

## C.  DEBTOR'S INTEREST AS A SETTLOR IS SUBJECT TO TURNOVER

The Missouri Uniform Trust Code has an express provision governing the revocation of revocable trusts (the "MUTC Revocation Provision"; Mo. Rev. Stat. § 456.6-602). Various methods of revocation are authorized depending on the circumstances of settlement and the kinds of property contributed to the trust. When a trust was created or funded by more than one settlor, to the extent the trust consists of community property, the trust may be revoked by either spouse acting alone. Mo. Rev. Stat. § 456.6-602.2(1).

Under the facts of the present case, in which Debtor and his spouse jointly funded the KR Trust with marital property, the MUTC Revocation Provision authorizes Debtor, acting alone, to revoke the KR Trust to the extent of the marital property. Such power is property of the bankruptcy estate. *See, e.g., In re Mack*, 269 B.R. 392, 411 (Bankr. D. Minn. 2001); *see also* 11 U.S.C. § 110; see also 5 Collier on Bankruptcy 541.11(2) (15th ed. 2007). Notably, Debtor concedes at various points in his Motion that it is plausible that he is a settlor of the KR Trust (SIS ¶¶ 84, 88, 89, 92, 98) and at one point Debtor relies on his status as a settlor to characterize the KR Trust as a "qualified spousal trust" (SIS ¶¶ 75, 76, 79). Given that Debtor allows in the Motion that he is a settlor, it follows that Debtor has a settlor's statutory power to revoke the KR Trust pursuant to Mo. Rev. Stat. § 456.6-602.2(1)[10] and that this power is subject to turnover.

---

[10] This line of argument is developed more fully in the Chapter 7 Trustee's Suggestions in Opposition to Kathleen Reuter's pending Motion to Dismiss (Doc #30), which are incorporated into the present document by reference.

**D.  DEBTOR'S RESERVED INTEREST UNDER THE INTERSPOUSAL AGREEMENT IS SUBJECT TO TURNOVER**

The clear purpose of the Interspousal Agreement (*Exhibit A*) is to allow Debtor to contribute marital property to the KR Trust and then, in the event of a divorce, withdraw the property so that it may be divided as ordinary marital property. Debtor achieves this purpose by reserving to himself a presently exercisable power to withdraw assets from the KR Trust by divorcing Kathy (*see Exhibit A*).

Debtor's right to distribute the KR Trust by divorcing Kathy supports the allegation in the Complaint that Debtor has the right to revoke the KR Trust. This right is analogous to the right of an employee to distribute a retirement trust upon termination of employment, which is the subject of a well-reasoned line of bankruptcy decisions that, although no longer applicable to retirement trusts due to a 1992 statutory amendment, is still controlling law concerning a beneficiary's dominion and control over distributions. *See, e.g., In re Swanson*, 873 F.2d 1121, 1124 (8th Cir.1989); *In re Davis*, 125 B.R. 242, 245 (Bankr.W.D. Mo.1991); *Wear v. Green (In re Green)*, 115 B.R. 1001, 1008 (Bankr.W.D.Mo.1990); *In re Schmitt*, 113 B.R. 1007, 1012 (Bankr.W.D.Mo.1990); *Berman v. Mead (In re Mead)*, 110 B.R. 434, 440 (Bankr.W.D.Mo.1990); *In re Gallagher*, 101 B.R. 594, 600 (Bankr.W.D.Mo.1989).

Although the Chapter 7 Trustee has no right to divorce Debtor from his spouse, the Chapter 7 Trustee "nevertheless succeeds to the same rights to control distribution of the trust proceeds." *In re Schmitt*, 113 B.R. at 1013-14. Because Debtor can absolutely obtain the proceeds at any time by divorcing his spouse, the Trustee in bankruptcy succeeds to that absolute right to compel distribution. *Id.* Because Debtor has a reserved power to compel the

distribution of assets in the KR Trust pursuant to the Interspousal Agreement, this power is subject to turnover.

## E.   SPENDTHRIFT CLAUSES ARE INVALID DURING THE LIFETIME OF A SETTLOR

Debtor contends that spendthrift provisions in the KR Trust make the assets of this trust inalienable (SIS ¶81-83). Debtor concedes, however, that if Debtor is a settlor of the KR Trust, his argument fails because Mo. Rev. Stat. § 456.5-505 "would obviate" the spendthrift provisions that he relies upon (SIS ¶ 84). This is, in fact, the case.

"Whether or not the terms of a trust contain a spendthrift provision, during the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors." Mo. Rev. Stat. § 456.5-505.  As shown above, the KR Trust is revocable and Debtor is a settlor of the KR Trust. Consequently, during Debtor's lifetime, the property of the KR Trust is subject to the claims of Debtor's creditors. As Debtor concedes, this "obviates" Debtor's argument concerning the validity of the spendthrift provisions.

## F.   THE KR TRUST IS NOT IRREVOCABLE

Debtor's arguments concerning irrevocable trusts (SIS ¶¶ 86-92) are irrelevant because, as established above, the KR Trust is both revocable and revocable by Debtor.

## G.   DEBTOR'S STATUS AS A BENEFICIARY IS IRRELEVANT

Debtor's arguments concerning limitations on his right to receive distributions as a beneficiary (SIS ¶¶ 93-99) are irrelevant because the Chapter 7 Trustee has shown that relief is plausible based on Debtor's status as a settlor and based on Debtor's reserved powers under the Interspousal Agreement (*see* above). Debtor's "beneficiary defense" does not defeat any of these approaches, and so it provides no basis for dismissal.

**H.  THE CHAPTER 7 TRUSTEE HAS A NONFRIVOLOUS ARGUMENT TO EXTEND EXISTING LAW**

Chapter 7 is intended to give "the truly needy a fresh start and not to give those who can afford to meet their obligations a head start." *In re Smith*, 269 B.R. 686, 692 (Bankr. W.D. Mo. 2001). A debtor who attempted to shield almost his entire net worth of $700,000 "did not want a mere fresh start, he wanted a head start." *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 876 (8th Cir. 1988). This "goes well beyond the purpose for which exemptions are permitted." *Id.* Debtor's actions in the present case are not meaningfully different.

Permitting Debtor to exclude substantially all of his $1.5 million in assets (approximate) from bankruptcy liquidation, while retaining the full enjoyment of those assets through the Disputed Trusts (including building a new luxury home while in bankruptcy, starting a new business outside the control of the Chapter 7 Trustee while in bankruptcy, and paying all of his living expenses and liabilities—except to his bankruptcy creditors), undeniably frustrates the purpose and spirit of the bankruptcy code. Debtor is not truly needy and seeks a head start rather than a fresh start, though the use of trusts that the Chapter 7 Trustee contends are "alter ego" trusts.  *See, e.g., United States v. Scherping*, 187 F.3d 796, 803 (8th Cir. 1999)(piercing trust that was alter ego of taxpayer).

Although there is no Missouri law applying the state law alter ego doctrine to trusts, at least one federal district court in Missouri assumes that if the alter ego of a trust "so dominated it that the trust had no separate mind, will or existence of its own," then under Missouri law the trust would be pierced in the same manner as a corporation. *See Dean v. United States*, 987 F. Supp. 1160, 1165 (W.D. Mo. 1997).

Whether the KR Trust is the alter ego of Debtor is a factual question raised in the Complaint, which alleges that, "Both before and after the filing of the underlying bankruptcy, Debtor exercised rights as a trustee under the Kathleen Reuter Trust in his sole discretion for his benefit" (Complaint ¶ 16). Debtor's arguments for dismissal based on the terms of the KR Trust have no application if the KR Trust is pierced, particularly because Mo. Rev. Stat. § 456.1-105.2 (13) provides that the terms of a trust may not alter "the power of the court to take such action and exercise such jurisdiction as may be necessary in the interests of justice."

As a result, if the Court finds it plausible that the KR Trust could be pierced under Missouri law or that the purposes of the bankruptcy code could otherwise require the Kr Trust to be equitably set aside, then turnover relief is plausible, and the Complaint should not be dismissed. Although this would arguably amount to an extension of the alter ego doctrine or the establishment of new bankruptcy law, the Chapter 7 Trustee is entitled to seek such new law in this case. *See* Rule FRCP 12(b)(2).

## X.   DEBTOR'S ARGUMENT FOR ABSTENTION HAS NO MERIT AND DEPENDS ON FALSE PREMISES

*(This point responds to Debtor's Point VII)*

The Chapter 7 Trustee does not recognize any ground for dismissal in Debtor's seventh point and cannot apprehend clearly what Debtor is arguing, except that Debtor appears to urge this Court that it has discretion to abstain from this case and that a proper way to exercise this discretion is to grant Debtor a dismissal with prejudice. This argument makes no sense at all. Nevertheless, it is apparent that Debtor relies on multiple false premises, including: (i) that Kathy Reuter is the only person who has the power to revoke the KR Trust; and (ii) that this

entire proceeding is, in substance, a "fraudulent transfer" action (SIS ¶¶ 100, 108, 110). Both of these premises are demonstrated false above.

Moreover, the equities argue for this Court to hear and decide this adversary proceeding because the Court deferred prior rulings concerning the subject matter of this proceeding and explicitly instructed the parties that the issues raised in the Complaint should be "handled" in this proceeding, and there is no other court with jurisdiction to determine whether the property at issue is property of the estate. Under these circumstances, the so-called "permissive abstention" that Debtor seeks would be entirely inappropriate and would merely force the parties to return to the suspended litigation of Debtor's claimed exemptions for the Disputed Trusts, which would not alleviate any of the concerns that Debtor raises as reasons for abstention.

Respectfully submitted,

 /s/ David G. Brown
 David G. Brown   MO #42559
 Brown Law Office LC
 501 Cherry Street, Suite 100
 Columbia, MO 65201
 (573) 814-2375
 (800) 906-6199 FAX
 dbrown@brown-lawoffice.com
 *Attorney For Chapter 7 Trustee*

**CERTIFICATE OF SERVICE:**  I hereby certify that on November 1, 2012, a copy of the above was served upon all persons requesting electronic notification by filing it with the Court using the CM/ECF system.

 /s/ David G. Brown_____