UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TANA S. CUTCLIFF, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 2:06-cv-04123-NKL |
| | ) |
| NATHAN P. REUTER, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

Pending before the Court is Plaintiffs' Motion to Reopen Case by Directed Reference to the Bankruptcy Judge. [Doc. #70]. For the following reasons, Plaintiffs' Motion is GRANTED.

**I.    Background**

In this long-running suit, Plaintiffs alleged that Nathan Reuter and several business partners, as part of an entity called Vertical Group, LLC, defrauded Plaintiffs of hundreds of thousands of dollars in a Ponzi scheme. This Court awarded Plaintiffs a default judgment against Vertical Group after Vertical Group failed to defend itself in court. [Doc. #52]. During Plaintiffs' suit, Reuter filed a Chapter 11 bankruptcy petition. As a result, Plaintiffs' case against Reuter was referred to Bankruptcy Judge Dennis Dow pursuant to 28 U.S.C. § 157(a), and the instant case was statistically closed prior to a determination of the amount of damages awarded against Vertical Group. [Doc. #64]. The bankruptcy case was later converted to a Chapter 7. Plaintiffs eventually received a final judgment

1

against Reuter for actual and punitive damages. *In re Reuter*, 686 F.3d 511 (8th Cir. 2012). Plaintiffs now seek to reopen the case against Vertical Group and request this Court to refer the case to Bankruptcy Judge Dow, or alternatively to conduct a hearing to determine the amount of damages awarded Plaintiff on the Vertical Group judgment and grant post-judgment execution. In order to satisfy the judgment against Vertical Group, Plaintiffs are attempting to reach a revocable trust into which Reuter and his wife Kathleen allegedly transferred substantially all of their assets, as well as Vertical Group property, prior to Reuter's bankruptcy. Reuter and Kathleen are both trustees and beneficiaries of this trust, but only Kathleen has the power to revoke, amend, or withdraw assets from the trust. The Bankruptcy Court has determined that the bankruptcy estate has an interest in the disputed trust. After Plaintiffs filed this Motion, Kathleen filed a motion to be joined as a necessary party [Doc. #74], which the Court granted [Doc. #76].

**II.    Discussion**

The key issues before the Court are whether the anticipated proceedings are related to Reuter's bankruptcy such that referral to the Bankruptcy Judge would be appropriate, and whether the Bankruptcy Court has jurisdiction to hear fraudulent conveyance actions under Article III of the Constitution.

**A.    Jurisdiction of the Bankruptcy Court over "Related" Actions**

Title 28 U.S.C. § 1334(b) grants the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see also Celotex Corp. v.*

2

*Edwards*, 514 U.S. 300, 307, 115 S. Ct. 1493, 1498 (1995). Under title 11, the Bankruptcy Code, district courts may also refer civil cases "arising under," "arising in," or "related to" title 11 to the bankruptcy judges for their districts. 28 U.S.C. § 157(a); 28 U.S.C. § 1334; *In re Farmland Indus., Inc.*, 567 F.3d 1010, 1017 (8th Cir. 2009). The bankruptcy judge has the authority to hear and determine all bankruptcy proceedings and "core proceedings" arising in or under a bankruptcy case, and to hear and recommend proposed findings of fact and conclusions of law in "non-core" proceedings. *In re AFY, Inc*., 461 B.R. 541, 547 (B.A.P. 8th Cir. 2012).

A claim "arises under" title 11 if it "invoke[s] a substantive right provided by the Bankruptcy Code." *In re Farmland Indus.,* 567 F.3d at 1018. A claim "arises in" a bankruptcy if it "ha[s] no existence outside of the bankruptcy" or "could only arise in the context of a bankruptcy," including allowance and disallowance of claims and determining the dischargeability of debts. *Id*. A civil proceeding is "related to" a bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy," as by altering "the debtor's rights, liabilities, options, or freedom of action" or impacting "the handling and administration of the bankruptcy estate." *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (quoting *In re Dogpatch U.S.A., Inc*., 810 F.2d 782, 786 (8th Cir.1987)). The jurisdictional grant of this "conceivable effect" test is "extremely broad"; for instance, related proceedings may include "suits between third parties which have an effect on the

3

bankruptcy estate," and "need not necessarily be against the debtor or against the debtor's property." *In re Farmland Indus.*, 567 F.3d at 1019 (internal quotes omitted).

In order for the Bankruptcy Court to exercise jurisdiction in the suit against Vertical Group, therefore, the suit must "arise in," "arise under," or be "related to" Reuter's bankruptcy proceeding. Plaintiffs argue that Reuter is personally liable for the Vertical Group judgment and have filed a proof of claim in Reuter's bankruptcy to that effect. The enforcement of the Vertical Group judgment would thus at the very least have a "conceivable effect" on the bankruptcy case. Therefore, the determination and enforcement of the Vertical Group judgment are sufficiently related to Reuter's bankruptcy to merit referral to the Bankruptcy Judge.

Plaintiffs are attempting to reach the disputed trust by asserting that Reuter's wife Kathleen is personally or jointly liable for the Vertical Group Judgment, and by using a creditor's bill to pursue Vertical Group assets that have been transferred into the trust. Plaintiffs argue that, as trustee of the disputed trust, Kathleen's liability is also "related to" Reuter's bankruptcy such that jurisdiction by the Bankruptcy Court is proper. The Bankruptcy Court has already determined that the estate has an interest in the disputed trust. *See In re Reuter*, 427 B.R. 727, 775 (Bankr. W.D. Mo. 2010) *aff'd*, 443 B.R. 427 (B.A.P. 8th Cir. 2011) *aff'd*, 686 F.3d 511 (8th Cir. 2012) ("it is clear that with the consent of the co-trustee, Debtor has the power to revoke the Trust. This power along with Debtor's beneficiary

4

interest in the Trust are clearly property of the estate under § 541."). However, in that proceeding, Judge Dow remarked that the "specific value of Debtor's interest in the Trust Property or how that value will be realized" was not before the court at that time, stating, "The Court leaves for another day, if the case is converted to a Chapter 7, for a trustee to make whatever arguments he or she determines are necessary to attempt to realize the value of the Debtor's interest in the Trust Property." *Id*. at 779. The case has now been converted to a Chapter 7 proceeding, and the Chapter 7 Trustee has initiated a proceeding in the Bankruptcy Court to determine the estate's rights to the trust. Therefore, referral to Judge Dow of related actions involving the trust, including the liability of Kathleen as trustee, is proper.

**B.     Jurisdiction of the Bankruptcy Court over Fraudulent Conveyance Suits**

Reuter asserts that even if the claim is "related" to the bankruptcy, the Bankruptcy Court's exercise of jurisdiction over Plaintiffs' attempt to recover from the disputed trust would violate Article III of the Constitution.

Article III vests judicial powers in the Supreme Court of the United States and "such inferior courts as Congress may from time to time ordain and establish." U.S. Const. Art. III § 1. Under Article III, Congress may not "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284, 18 How. 272 (1856). However, Congress

5

may permit district courts to refer decisionmaking authority in limited cases to non-Article III courts, including bankruptcy courts. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52-53, 109 S. Ct. 2782, 2796-2797 (1989); *Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011), *reh'g denied*, 132 S. Ct. 56 (2011).

Importantly, even where Congress has given bankruptcy courts statutory jurisdiction over a certain type of claim, that grant of jurisdiction may still violate Article III of the constitution. *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87, 102 S. Ct. 2858, 2880 (1982); *Granfinanciera*, 492 U.S. at 49, 109 S. Ct. at 2794. The Bankruptcy Code grants a bankruptcy trustee the power to void transfers as fraudulent under both federal and state law. 11 U.S.C. §§ 544, 548. Reuter argues that Plaintiffs' attempt to recover from the disputed trust is a "fraudulent conveyance suit," and that under the Supreme Court's holdings in *Granfinanciera* and *Stern*, such a claim must be adjudicated by an Article III Court.

In *Granfinanciera*, the Supreme Court held that petitioners who had not submitted a claim against a bankruptcy estate, but who had been sued by the trustee in bankruptcy to recover for an allegedly fraudulent conveyance, were still entitled to a jury trial under the Seventh Amendment. *Granfinanciera*, 492 U.S. at 49, 109 S. Ct. at 2794. Contrary to Reuter's claim, the Court did not hold broadly that all fraudulent conveyance suits must be heard by Article III Courts. In fact, the Court recognized the narrowness of its holding, stating, "The only question we have been called upon to answer in this case is whether the Seventh Amendment

6

grants petitioners a right to a jury trial." *Granfinanciera*, 492 U.S. at 64 n.19, 109 S. Ct. at 2802 n.19. The Court explicitly refrained from deciding whether bankruptcy courts could conduct jury trials in fraudulent conveyance actions and whether to do so would violate Article III. *Id*. at 64, 2802. The *Granfinanciera* decision was thus clearly limited to the issue of the right to a jury trial in a fraudulent conveyance action, not whether bankruptcy courts may hear fraudulent conveyance suits more broadly.

In *Stern v. Marshall*, the Court held that, despite a statute granting such authority, it violated Article III for a bankruptcy judge to determine counterclaims by the estate that arose under state or other non-bankruptcy law. *Stern*, 131 S. Ct. at 2611. However, again the Court emphasized the narrowness of its holding, stating, "the question presented here is a 'narrow' one… Congress, in one isolated respect, exceeded" the limitations of Article III by permitting the Bankruptcy Court "to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id*. at 2620. Like the holding in *Granfinanciera*, the holding in *Stern* is thus clearly limited to the issue before the Court, the ability of non-Article III courts to enter final judgment on state law counterclaims where the counterclaim was not so closely related to the creditor's claim that it could be adjudicated as part of the claims resolution process. Based on the Supreme Court's emphasis on the narrowness of its holding in *Stern*, the Bankruptcy Appellate Panel of the Eighth Circuit has stated that it would "take the Supreme Court at its word and hold that the balance of the authority granted to

7

bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional," unless the Supreme Court explicitly determines otherwise. *In re AFY, Inc.*, 461 B.R. at 547-48.

As the holdings of these cases reveal, contrary to Reuter's claim, the Supreme Court has not explicitly stated that fraudulent conveyance claims that are sufficiently "related to" the bankruptcy action are nonetheless the exclusive province of Article III Courts. Other courts to consider the issue have held that the referral of suits involving fraudulent conveyances to a bankruptcy court does not violate Article III. *See, e.g., In re Vista Bella, Inc.*, 2012 WL 3778956 at *3 (Bankr. S.D. Ala. Aug. 30, 2012) (holding that "*Stern* did not restrict a bankruptcy court's ability to hear and finally adjudicated fraudulent transfer claims"); *In re Kimball Hill, Inc.*, 480 B.R. 894, 906 (Bankr. N.D. Ill. 2012) (same); *In re Bujak*, 2011 WL 5326038 at *2 (Bankr. D. Idaho Nov. 3, 2011) (same); *In re Blixseth*, 463 B.R. 896, 907 (Bankr. D. Mont. 2012) (bankruptcy court had jurisdiction to adjudicate fraudulent transfer claims); *In re Citron*, 2011 WL 4711942 at *2 (Bankr. E.D.N.Y. Oct. 6, 2011) (same, stating that *Stern* only prohibited bankruptcy courts from adjudicating "plain-vanilla state law counterclaim[s]" that were not "related to the underlying bankruptcy case"). *See also In re Canopy Fin., Inc.*, 464 B.R. 770, 773 (N.D. Ill. 2011) (reading *Granfinanciera* for the proposition that "a court deciding a fraudulent conveyance action was exercising Article III judicial power," and holding that bankruptcy courts may hear fraudulent transfer claims, but may only enter findings and recommendations instead of final

8

judgment); *In re Lyondell Chem. Co.*, 467 B.R. 712, 722 (S.D.N.Y. 2012) (same); *In re The Mortgage Store, Inc.*, 464 B.R. 421, 428 (D. Haw. 2011) (declining to decide whether the bankruptcy court had jurisdiction to enter final judgment on a fraudulent transfer case, but finding that it could at least enter findings and recommendations); *In re Teleservices Group, Inc.*, 456 B.R. 318, 338 (Bankr. W.D. Mich. 2011) (same); *In re Miller*, 467 B.R. 677, 683 (Bankr. D. Mass. 2012) (same); *In re Agriprocessors, Inc.*, 479 B.R. 835, 847 (Bankr. N.D. Iowa 2012) (same); *Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 863 (D. Minn. 2011) (same).

Following the reasoning of these courts and the admonition of caution from the Eighth Circuit B.A.P., the Court holds that at the very least the Bankruptcy Court has jurisdiction to hear the instant case. There is no need at this time for the Court to determine whether or not the Bankruptcy Court has final decisionmaking authority with regards to fraudulent transfer claims.

### C.   Automatic Stay

Reuter also argues that this proceeding is barred by 11 U.S.C. § 362(a), which effects an automatic stay on, *inter alia*, all actions to "obtain possession" of property of the estate. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case… wherever located and by whomever held." 11 U.S.C. § 541(a). This claim arises under the bankruptcy proceeding, and so is properly referred to the Bankruptcy Court, where Judge Dow may determine whether the automatic stay provision applies. *See, e.g.,*

9

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 432 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. In re Madoff*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012) (the bankruptcy court has equitable powers to stay suits "which may affect the amount of property in the bankrupt estate, or the allocation of property among creditors")(internal quotes omitted).

### D.     Conflict of Interest

Finally, Reuter argues that a conflict of interest exists because the lawyer advising the Chapter 7 Trustee is also the lawyer for the Plaintiffs.  The Bankruptcy Code provides, "the trustee, with the court's approval, may employ one or more attorneys.., that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327(a).  Importantly, the Code further provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor," and permits the court to "disapprove such employment if there is an actual conflict of interest."  11 U.S.C. § 327(c).  Reuter has introduced evidence that the potential for a conflict of interest has been brought to the attention of the Bankruptcy Court by both himself and the United States Trustee.  As this matter is already before the Bankruptcy Court, this Court will not decide the matter here.

### III. Conclusion

For the above stated reasons, Plaintiff's Motion to refer the instant case to Bankruptcy Judge Dow is GRANTED.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: January 15, 2013
Jefferson City, Missouri