**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Nathan Paul Reuter,** | ) | **Case No. 07- 21128-DRD-11** |
| **Debtor.** | ) | |
| _____ | ) | |
| **Jill D. Olsen, Trustee,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Adversary No. 12-02028** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Nathan Paul Reuter and** | ) | |
| **Kathleen S. Reuter,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on the Motions to Dismiss of Nathan Paul Reuter

("Debtor") and Kathleen S. Reuter (the "Motions").  This Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b).  This is a core proceeding which this Court

may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(A) & (E).  For all the reasons set forth

below the Court will grant the Motions in part and deny the Motions in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2006, certain individual plaintiffs filed a Civil Complaint in the Western

District of Missouri against Debtor.  Debtor filed a Chapter 11 bankruptcy case on July 27, 2007.

The district court case was stayed by Debtor's bankruptcy filing so, in an attempt to recoup their

lost investment monies, those plaintiffs filed an adversary proceeding claiming that the

1

respective debts owed should be nondischargeable as they were incurred as a result of Debtor's

false pretenses, false representations and/or through actual fraud pursuant to § 523(a)(2)(A).  The

adversary plaintiffs' claims were litigated and determined to be nondischargeable.

Debtor and his wife (the "Defendants") are co-trustees of the Kathleen S. Reuter

Revocable Trust (the "Kathleen Trust") and the Nathan P. Reuter Revocable Trust (the "Nathan

Trust") which were created on September 16, 2005 (the "Trusts").  Copies of the Trusts

documents are attached to the Complaint along with a copy of an Interspousal Agreement which

plays a minimal role in the issues.[1]  On April 14, 2010, this Court issued an Opinion in which it

held, in the context of denying confirmation of Debtor's proposed plan, that Debtor has interests

in property of the Trusts and that such interests are property of the estate.  The Court left it to the

bankruptcy Trustee, in the event of conversion, to determine what action was necessary to realize

on the Debtor's interest in the Trusts.

The case was converted to Chapter 7 on May 28, 2010.  The Trustee (or the "Plaintiff")

was appointed and challenged Debtor's rights in the Trusts.  Thereafter, the Trustee filed this

adversary proceeding claiming the following regarding Debtor's rights in the Trusts: (a) Debtor's

rights as trustee to manage and control the trust res, and to make distributions to the estate to pay

Debtor's debts, are property of the estate to be exercised at the Trustee's discretion; (b) Debtor's

beneficial interest in the Trusts are property of the estate and any purported spendthrift provision

is invalid; and (c) Debtor's rights to revoke the Trusts are the Trustee's to exercise.  Complaint, ¶

34.  In order to realize the claimed rights in the estate property, the Trustee has sought a

---

[1]  Initially Kathleen opposed the Court taking judicial notice of the Interspousal Agreement but she now
concedes this issue.  In any event, the Court determines that it is appropriate for it to consider the Agreement as it is
a part of the case docket and thus a public record.  *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (court records

declaratory judgment (1) that Debtor has an interest in, and power over, the property of the

Kathleen S. Reuter Revocable Trust, declaring the extent of such interest and power, and

declaring that such interest and power are property of the bankruptcy estate; (2) that Debtor has

an interest in, and power over, the property of the Nathan Trust, declaring the extent of such

interest and power, and declaring that such interest and power are property of the bankruptcy

estate; (3) ordering Defendants to turnover to the Trustee all interests and powers declared by the

Court to be property of the estate; and (4) ordering Debtor to make an accounting of all property

of the estate or the value thereof.  The Court will discuss the relevant portions of the Trusts in the

following Opinion where applicable.

Defendants have filed Motions to Dismiss the Trustee's Complaint for a variety of

reasons that are discussed in detail in the following analysis.

## II.  MOTIONS TO DISMISS

### A.  Applicable Standard

To withstand a motion under Rule 12(b)(6), a complaint must plead sufficient facts to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

577 (2007); *see also, Alexander v. Hedback*, 718 F.3d 762 (8th Cir. 2012); *M.M. Silta, Inc. v.

Cleveland Cliffs, Inc.*, 616 F.3d 872 (8th Cir. 2010).  To defeat a motion to dismiss for failure to

state a claim, the plaintiffs need not provide specific facts in support of their allegations, but they

must include sufficient factual information to provide the grounds on which the claim rests, and

to raise a right to relief above a speculative level.  *See Schaaf v. Residential Funding Corp.*, 517

F.3d 544 (8th Cir. 2008).  When considering a motion to dismiss pursuant to Fed.R.Civ.P.

---

are public records and the court may take judicial notice of such).

12(b)(6), the court must view the facts alleged in the complaint in the light most favorable to the

plaintiff. *In re Glossip*, 331 B.R. 871 (Bankr. W.D. Mo. 2005) (citing *Burkhalter v. Lindquist &*

*Trudeau, Inc.,* 2005 WL 1983809 (E.D. Mo. 2005)).

## B.  Procedural Issues

**1.  This Court is a "Court of the United States" as defined in 28 U.S.C. § 451 and has authority to make or enter declaratory judgments under 28 U.S.C. § 2201.**

Debtor argues that this Court cannot enter a declaratory judgment in the case as Plaintiff

seeks because it is not a "court of the United States" as required under § 2201.  A bankruptcy

judge is authorized to hear and determine all core proceedings arising under title 11 or arising in

a case under title 11 and to enter appropriate orders and judgments in those proceedings.  28

U.S.C. §157(b)(1).  A bankruptcy judge may also hear a proceeding that is not core but

"otherwise related to" the bankruptcy case and submit proposed findings of fact and conclusions

of law to the district court for entry of final order or judgment.  28 U.S.C. § 157(c)(1).

The Court acknowledges that other circuits are split on the issue but there is no clear

majority.  Although it is often dependent upon the context, some courts hold the bankruptcy

court cannot be considered a "court of the United States." *See, e.g.*, *IRS v. Brickell Investment*

*Corp.*, 922 F.2d 696 (11th Cir. 1991); *In re Courtesy Inns, Ltd.*, 40 F.3d 1084 (10th Cir. 1994);

*Miller v. Cardinale (In re DeVille)*, 280 B.R. 483 (9th Cir. B.A.P. 2002).  Other courts come to

the opposite conclusion.  *See, e.g.*, *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3rd Cir.

2008); *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000); *Baker v. Latham Sparrowbush Assoc. (In*

*re Cohoes Indus.Terminal, Inc.*), 931 F.2d 222 (2nd Cir. 1991); *In re Yochum*, 89 F.3d 661, 669

(9th Cir. 1996); *In re Grewe*, 4 F.3d 299, 304 (4th Cir. 1993).  However, the law in the Eighth

4

Circuit is clear.

In the most recent Eighth Circuit case on the issue, the court held that the bankruptcy court has the power to issue declaratory judgments when the matter in controversy regards the administration of a pending bankruptcy estate. *See Sears, Roebuck and Co. v. O'Brien,* 178 F.3d 962, 964 (8th Cir.1999) (citing *National Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 329-30 (8th Cir. 1988)). This Court has agreed in *In re Weller*, 316 B.R. 708 (Bankr. W.D. Mo. 2004), and also noted that the party seeking a declaratory judgment must bear the burden of proof in these proceedings. *See Reliance Life Ins. Co. v. Burgess,* 112 F.2d 234, 238 (8th Cir. 1940); *see also, Debold v. Case ( In re Tri–River Trading, LLC),* 317 B.R. 65, 2004 WL 2382679 (Bankr. E.D. Mo.2004).  Debtor cites *In re Arkansas Communities, Inc.*, 827 F.2d 1219 (8th Cir. 1987), to support his position that this Court is not a court of the United States.  However, the *Sears, Roebuck* case comes twelve years after that case and is thus clearly the current binding precedent on the issue in this Circuit.

Debtor also argues that the Federal Rules of Bankruptcy Procedure do not provide for declaratory judgment in the form of a "bankruptcy equivalent" to Federal Rule of Civil Procedure 57 and, therefore, the Court does not have the power to exercise declaratory judgment powers as does a district court.  Although the Bankruptcy Rules do not specifically provide for and govern a declaratory judgment action, declaratory relief is provided for in the Bankruptcy Rules.  Fed. R. Bankr. P. 7001(9) states that a proceeding to obtain a declaratory judgment relating to the subject matter of any of the various adversary proceedings listed in the Rule is an adversary proceeding itself.  *See* Advisory Committee Note to Rule 7001.  In this case, the proceeding is seeking to obtain declaratory judgment relating to the type of claim listed in Rule

5

7001(2), "a proceeding to determine the validity, priority, or extent of a lien or other interest in property...."  Such a proceeding is thus governed by the rules in Part VII, which provide the needed procedural framework for processing the Trustee's claims.

Finally, Debtor argues that the Supreme Court held, in the recent case of *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), that a bankruptcy court is not an adjunct to the district court and therefore does not have statutory powers under 28 U.S.C. §451 to enter a final judgment in this case.  The Court disagrees with Debtor's contention that a bankruptcy judge lacks the constitutional power to enter a final judgment in this adversary proceeding.  The Supreme Court held in the *Stern* case that the bankruptcy court lacked *constitutional* authority to enter a final judgment on a state law counterclaim based on tortious interference, but that it had the *statutory* authority to do so under § 157(b)(2)(C).  Further, a turnover proceeding like this one is a paradigmatic exercise of the Court's in rem jurisdiction, very different from the scenarios considered in *Stern*.  *See, e.g., In re Pali Holdings, Inc.*, 488 B.R. 841 (Bankr. S.D.N.Y. 2013)(holding that bankruptcy court could constitutionally exercise its in rem jurisdiction to issue final judgment for turnover of amount owing on promissory note).

A turnover action is expressly listed in 28 U.S.C. § 157(a)(2) as one of several kinds of "core proceedings" and with respect to which bankruptcy judges could still enter final orders. *See In re Pali*, 488 B.R. at 850. After *Stern*, it is now clear that whether a matter is "core" as a statutory matter is not dispositive of the bankruptcy judge's power, as a constitutional matter, to issue a final judgment.  But the reported post- *Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions. *See id.* (citing *Badami v. Sears* (*In re AFY, Inc.*), 461 B.R. 541 (8th Cir. B.A.P. 2012)(concluding that

6

bankruptcy judge could issue a final judgment in a turnover proceeding; noting that "the

Supreme Court itself has cautioned that its holding is a narrow one, affecting only ... one small

part of the bankruptcy judges' authority. Unless and until the Supreme Court visits other

provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance

of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is

constitutional"); *In re Crescent Resources, LLC*, 457 B.R. 506, 510 & n. 2 (Bankr. W.D. Tex.

2011)(concluding that bankruptcy court could issue a final judgment in a turnover matter,

explaining that *Stern* dealt with issues different than those in the turnover matter before him, and

likewise concluding that *Stern* should be applied narrowly); *In re McCrory*, 2011 WL 4005455,

at *1 (Bankr. N.D. Ohio 2011)(A turnover proceeding was one "that 'stems from the bankruptcy

itself' that is within this court's jurisdiction to decide.") ( quoting *Stern*, 131 S.Ct. at 2618); *In re*

*Hernandez*, 468 B.R. 396, 401 n. 4 (Bankr. S.D. Cal. 2012)(court had constitutional authority in

a turnover proceeding based, among other things, on fact that it stemmed from the bankruptcy

itself ); *Rentas v. Claudio* ( *In re Garcia* ), 471 B.R. 324, 330 (Bankr. D.P.R. 2012)("a turnover

action is a fundamental bankruptcy matter that 'stems from the bankruptcy itself' and 'would

necessarily be resolved in the claims allowance process' because it intricately hinges on the

proper constitution of the bankruptcy estate," and noting that as ruled in *Braunstein v. McCabe*,

571 F.3d 108, 122 (1st Cir. 2009), a turnover proceeding "invokes the [bankruptcy] court's most

basic equitable powers to gather and manage the property of the estate"); *Shaia v. Taylor* (*In re*

*Connelly*), 476 B.R. 223, 231–34 (Bankr. E.D. Va. 2012) (bankruptcy court had statutory and

constitutional power to enter a final judgment in a turnover proceeding where the trustee was

attempting to enforce a promissory note in the trustee's possession that was payable to bearer,

because, among other things, it affected claims allowance process); *Burns v. Dennis* (*In re Southeastern Materials, Inc.*), 467 B.R. 337, 357 (Bankr. M.D.N.C. 2012)(court had constitutional power to enter a final judgment in section 542 action against corporate officers, who had filed claims against the estate, for recovery on loans debtor had made to them, not just because they had filed claims and turnover right would necessarily be resolved in claims allowance process, but also because it stemmed from bankruptcy itself. "Both prongs of the Stern test have been met.").

Accordingly, this Court will follow the well-reasoned precedent set forth by the Eighth Circuit in *Sears Roebuck* and the Eighth Circuit BAP in *In re AYP* and finds that a bankruptcy court is a "court of the United States" for the purpose of issuing a declaratory judgment in this case and has power to enter a final order.

**2.    The Court Should Not Stay and Abstain From All Further Proceedings in this Case.**

From what the Court can discern, Debtor requests that the Court abstain from all further proceedings in this case because it would be a waste of time and money if the Court cannot enter final judgment.[2]  Debtor then goes on to repeat, in different terms, his argument that the Court cannot enter a final judgment based on *Stern v. Marshall* and that Plaintiff's claims are nothing more than fraudulent conveyance claims.

Debtor also cites *In re Kesar Enterprises, Inc.*, 330 B.R. 756 (Bankr. W.D. Mo. 2005), for the proposition that when it is in the interest of the parties or state law, the court should

---

[2]Despite the fact Debtor refers to subject matter jurisdiction, that is not the question at issue.  Rather, the controversy is whether a bankruptcy court has the ability to enter a final judgment.  *See In re Pali Holdings, Inc.*, 488 B.R. 841, 849 n. 26 (Bankr. S.D.N.Y. 2013) (subject matter jurisdiction clearly exists per 28 § 1334(b)).

abstain from hearing a particular proceeding.  That case is distinguishable because it was heavily influenced by forum shopping by one party which is not at issue here.  In determining whether permissive abstention is appropriate under § 1334(c)(1), the courts have considered numerous factors, including the following: (1) the extent to which the issues involve difficult or unsettled issues of state law; (2) the extent to which state law or other esoteric and technical issues predominate; (3) the effect of abstention on the efficient administration of the bankruptcy proceedings; (4) the presence of a commenced state law action in which the matter may be determined; (5) the degree of relatedness to the main bankruptcy proceeding; (6) the burden on the bankruptcy court's docket; (7) the likelihood that one of the parties is forum shopping; (8) the presence or necessity in the proceeding of non-debtor parties; (9) the existence of a jurisdictional basis other than 28 U.S.C. § 1334; (10) the existence of a right to a jury trial and whether the parties do or do not consent to a jury trial in the bankruptcy court; (11) the financial condition of the parties; and (12) the case's status as a "related" matter rather than a core proceeding. *In re Kesar Enterprises, Inc.*, 330 B.R. 756 (Bankr. W.D. Mo. 2005) (citing *Krigel's, Inc.,* 263 B.R. 280, 282 (Bankr. W.D.Mo. 2001)(*citing Phelps Tech. Inc.,* 238 B.R. at 823)); *see also, e.g., Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*), 912 F.2d 1162, 1169 (9th Cir. 1990); *Tarkio College v. Bower* (*In re Tarkio College* ), 137 B.R. 34, 36 (W.D. Mo. 1992); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc.* (*In re Republic Reader's Serv., Inc.*), 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987). Courts should apply these factors flexibly as their relevance and importance will vary depending on the specific facts of each case and no one factor is determinative. *See Krigel's Inc.,* 263 B.R. at 286 (*citing Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir. 1993)).

9

In this case, the factors do not weigh in the interest of this Court abstaining from further proceedings. The efficient administration of the case would not be promoted by this Court abstaining. As a matter of fact, the opposite is true. Nor is there a pending state case in which the matter may be determined. Further, the issues raised by the Trustee are directly related to the main bankruptcy proceeding and there is no need for any non-debtor parties regarding the claims at issue, except Kathleen, who has not suggested the Court lacks power over her. No party claims to have a right to jury trial or has demanded one. Also, as discussed, the issues raised deal with "core" proceedings.

*Stern* has prompted many decisions by lower courts exploring the scope of bankruptcy courts' authority to enter final judgment in core proceedings. Most courts, including the Eighth Circuit, have read *Stern* narrowly, based on its own language that it is a narrow decision and on its holding that Congress exceeded Article III's limitations "in one isolated respect." *See, e.g., In re AFY, Inc.*, 461 B.R. 541 (B.A.P. 8th Cir. 2012); *Hamilton v. Try Us, LLC*, 491 B.R. 561 (W.D. Mo. 2013); *Deitz v. Ford (In re Deitz),* 2012 Bankr.LEXIS 1968 at *12–15 (B.A.P. 9th Cir. 2012). Those courts reading *Stern* more broadly have generally been concerned with fraudulent conveyance actions, which perhaps follows naturally from *Stern's* language, borrowed from *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), about "augmenting" the bankruptcy estate at the expense of third parties. *In re Cedar Funding, Inc.*, 2012 WL 3309683 (N.D. Cal. 2012). Even there, a split of authority exists, with some courts concluding that fraudulent conveyance actions may still be determined by bankruptcy courts. *In re Cedar Funding*, 2012 WL 3309683 (citing *In re Safety Harbor Resort & Spa,* 456 B.R. 703, 716–17 (Bankr. M.D. Fla. 2011) (finding the *Stern* Court's reliance on *Granfinanciera* did not actually limit bankruptcy courts'

jurisdiction to resolve categories of core proceedings not at issue in *Stern,* including fraudulent

conveyance or preference actions)).  The Court need not decide this question as it rejects

Debtor's assertion that the Trustee's claims are essentially for the avoidance of fraudulent

transfers.

Debtor cites *In re Cedar Funding* as a comparable situation. It is, but not in a way which

helps the Debtor. In that case the court found that the claims were "sufficiently unlike a

fraudulent conveyance action that *Stern* does not clearly bar the bankruptcy court's jurisdiction."

*Cedar Funding*, 2012 WL 3309683 *5.  The bankruptcy judge concluded that the claims were

better characterized as a request to determine what is property of the bankruptcy estate, which is

an issue that stems from the bankruptcy itself.  It seems to this Court that *In re Cedar Funding* is

factually similar to this case in that the Plaintiff's claims here are also better characterized as a

request for a declaratory judgment to determine that Debtor's rights and powers in the Trusts are

property of the estate.  Other courts agree that bankruptcy courts have authority to determine

what is and is not property of the bankruptcy estate in the wake of *Stern. See id.* (citing

*BankUnited Fin. Corp. v. FDIC (In re BankUnited Fin. Corp.),* 462 B.R. 885, 893–94 (Bankr.

S.D. Fla. 2011)).  Further, courts have exercised authority in declaratory actions to determine

whether property belongs to a bankrupt's estate. *In re Cedar Funding, Inc.*, 2012 WL 3309683.

Additionally, the *Cedar Funding* court agreed with the majority view on this issue: even

if *Stern* prohibits a bankruptcy court from entering a final judgment in a particular statutorily

core proceeding, the bankruptcy court may still hear the proceeding and submit proposed

findings to the district court.  *See In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565-66 (9th

Cir. 2012); *see also, In re Mamtek US, Inc.*, 2013 WL 4602657, *1 n. 1 (Bankr. W.D. Mo. 2013)

11

and cases cited therein.  This Court also agrees with that view and does not believe, as Debtor

urges, that this would be "a singular waste of time and money."  This Court believes that it can in

fact enter final judgment in a declaratory judgment action but even if it could not, the proposed

findings of fact it would send to the district court would lessen the time and effort required by

that court.

### C.  Affirmative Defenses

**1.     Plaintiff's claims are not barred by any statute of limitations.**

Debtor asserts that Plaintiff's claims for equitable relief in the form of a declaratory

judgment, turnover and accounting could have been resolved through a fraudulent transfer action

and such action is now time-barred.  Thus, he argues, the equitable claims are also time-barred.

Unfortunately, none of the cases cited by Debtor is directly on-point or supports his argument.

For example, he cites *Town of Orangetown v. Gorsuch*, 718 F.2d 29 (2nd Cir. 1983), for the

proposition that if a claim for declaratory relief could have been resolved through another form

of action which has a specific limitations period, that specific period of time will govern.  That

case is distinguishable for several reasons.  First, it was an environmental case governed by New

York state law.  Second, that court found that the plaintiff was trying to avoid the statute of

limitations by simply relabeling the claim.  Here, the claim asserted (declaratory relief regarding

the estate's interest in the Trusts) is not the same as the claim allegedly barred (avoidance of the

transfer of the property into the Trusts).

Plaintiff is not seeking to avoid fraudulent transfers but rather is seeking to step into the

Debtor's powers and rights under the Trusts and to have her right to do so determined by the

Court in the form of a declaratory judgment.  She also seeks a ruling ordering Debtor to turnover

those powers and rights as property of the estate and provide an accounting of the powers and rights he is bound to turnover.  As discussed above, it is clear that a turnover action under § 542 may be used to effectuate the turnover of property of the estate and is a cause of action as a core proceeding under 28 U.S.C. § 157(b)(2)(E).  *See In re Dean*, 107 F.3d 579 (8th Cir. 1997).

As these claims are causes of actions unto themselves and nowhere in the Complaint has Plaintiff attempted to plead an avoidance action, the statute of limitations for the claims actually pled is what is at issue.  Plaintiff may seek and obtain a declaratory judgment without bringing a separate claim that may exist.  *See, e.g., Allied Inv. Corp. v. Jasen*, 731 A.2d 957 (Md. 1999) (holding complaint was not based on a conversion claim but was a declaratory judgment action, thus not governed by conversion statute of limitations).  Debtor and Trustee agree that the declaratory judgment claim in this case is an equitable claim.  Traditionally, statutes of limitation do not apply to requests for equitable relief.  *See Holmberg v. Armbrecht*, 327 U.S. 392 (1946).  The Court finds that this is not a fraudulent transfer claim disguised as a declaratory action claim and the statute of limitations as to §544 actions is not applicable.

Similarly, Debtor has a duty to turnover property of the estate and if there is a dispute as to whether such property belongs to the estate, the Trustee may file a complaint compelling Debtor to do so. There are no strict deadlines or statute of limitations mandating when the Trustee must take such action.  *See In re Johnson*, 371 B.R. 380 (Bankr. E.D. Ark. 2007).  The statute of limitations under § 546 that Debtor argues bars Plaintiff's claims does not apply to suits brought under § 542 and therefore is not applicable to turnover or accounting actions brought under that section.  *See In re Ollada*, 114 B.R. 654 (Bankr. E.D. Mo. 1990) (turnover claim and avoidance claim brought as separate counts and court dismissed the avoidance claim

13

as barred by statute of limitations but allowed turnover claim to continue). Accordingly,

Plaintiff's claims for turnover and accounting are also not barred by the statute of limitations

applicable to § 544 actions.

### 2.       Plaintiff's Claims are Not Barred by the Concurrent Remedy Doctrine.

 Debtor argues in his reply brief that Plaintiff's claims are barred by the concurrent

remedy doctrine.  The rule in this circuit is that "where a legal and equitable remedy exist for the

same cause of action, equity will generally follow the limitations statute."  *In Roemmich v. Eagle

Eye Dev., LLC,* 526 F.3d 343 (8th Cir.2008).  Debtor argues, again, that because Plaintiff should

have brought a fraudulent transfer claim, which would be time-barred, that the equitable

declaratory judgment, turnover and accounting claims at issue are likewise time-barred.  The

problem with Debtor's argument in that regard is that these are not the same causes of action.  A

fraudulent transfer claim would seek to avoid Debtor's transfers into the Trusts.  The claims that

Plaintiff has actually brought are seeking a declaratory judgment and turnover/accounting of

Debtor's rights and powers in those Trusts.  Thus, these are not the same causes of actions and

not barred by the concurrent remedy doctrine as that doctrine deals with two remedies for the

same claim, not different claims as is the case here.

### 3.       Plaintiff has stated a claim for "accounting" and can bring a claim under
turnover theory.

Debtor also contends that Plaintiff's claim for an accounting fails to state a claim under

Missouri law.  Whether true or not, however, it is irrelevant.  Of course, there is a state law cause

of action for an accounting as discussed by this Court in *In re Vantage*, 385 B.R. 670 (Bankr.

W.D. Mo. 2008).  In *Vantage*, the debtor was seeking an accounting under state law as related to

a foreclosure sale.  However, this is not the claim brought by Plaintiff in this case; Plaintiff's

claim for an accounting is brought under § 542 (which specifically authorizes the Court to order

such relief) and is governed by the Bankruptcy Code and applicable federal bankruptcy law.

Similarly, a turnover proceeding brought under § 542 by a trustee to bring assets or

interests back into the bankruptcy estate is a core proceeding.  Debtor makes much ado in his

memorandum and reply that a turnover action can only be brought if the property rights are not

in dispute and cannot be used to demand assets whose title is in dispute.  Once again, Debtor is

mischaracterizing Plaintiff's claims.  Plaintiff is not seeking to have the Trust assets turned over

to the estate; rather, Plaintiff is seeking to have Debtor's powers and rights in the Trusts turned

over to the estate.  The Trustee would then be able to utilize those rights and powers to the extent

that Debtor would have been able to utilize them.  The fact that Debtor has an interest in his

rights and powers in the Trusts is not in dispute and a § 542 turnover action is properly brought

by the Trustee and entertained by this Court.  *See Dean*, 107 F.3d at 582 (holding that

"determining the nature and extent of property of the estate is also a fundamental function of a

bankruptcy court" and therefore the turnover action is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A)").  Further, while it is true that a turnover action may not be appropriate if the right

is disputed, that principle is not applicable here because the turnover claim is ancillary relief to

the declaratory judgment claim.  Once this Court resolves the dispute on the latter claim, it can

then order turnover as a remedy.

**4.      Plaintiff's Claims as to the Insurance Trust are Not Barred by Doctrine of
Res Judicata.**

Debtor asserts that the Court previously overruled the Trustee's objection to Debtor's

exemption in the Nathan Trust and thus, Plaintiff is barred by res judicata from claiming any interest in this specific trust.  Debtor overstates the case. The Court agrees that it did overrule Trustee's objection to Debtor's claim of exemption in certain specific policies in the Nathan Trust and therefore, those assets in that trust are exempt.  However, Debtor's rights and powers in the Nathan Trust were not included in the exemption and may still be claimed by Plaintiff as property of the estate.  Further, the Court does not know whether the policies claimed as exempt are the only assets in the Nathan Trust or whether there are other assets not claimed as exempt that may be property of the estate.

**5.      Statutory amendment does not apply retroactively.**

The Debtor contends that pursuant to §456.950, a 2011 amendment to the MUTC, the assets in Kathleen's Trust are immune from turnover.   Through the enactment of §456.950.1(3), tenancy by the entirety property does not lose its character as such when it is transferred into a "Qualified Spousal Trust" and thus, enjoys the same immunity to the claims of creditors as would have existed if the settlors had continued to hold that property as tenants by the entirety. Debtor alleges that Kathleen's Trust is a "qualified spousal trust," therefore, its assets cannot be reached by the Trustee.   The Debtor takes the position that the MUTC amendment applies "regardless of whether such trust was created before or after August 28, 2011." §456.950.1(7). The Trustee responds that §456.950 cannot be retroactively applied to the Debtor's bankruptcy estate because the Court is to apply the exemption law in effect on the date of the filing of the petition, July 27, 2007, and the Missouri Constitution prohibits the 2011 amendment from taking

away or impairing the interests the Trustee obtained prior to that amendment.[3]   The Court agrees on both counts.

With respect to the applicability of the amendment, the Trustee correctly states that the relevant moment for determining whether property constitutes property of the bankruptcy estate is as of the commencement of the case.   11 U.S.C. §541(a)(1),   *In re Nelson*, 322 F.3d 541, 544 (8th Cir. 2003)(citing 11 U.S.C. §541(a)(1)).   Likewise, in terms of exemptions, a debtor's rights are generally determined in accordance with the state law applicable on the filing date. 11 U.S.C. §522(b)(3)(A).   *See also In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 9012)("Under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition."). Therefore, this Court must apply the law that was in effect on the date of the Debtor's bankruptcy filing, years before the enactment of the amendment.     The change in Missouri exemption law effected four years after the filing of the case is irrelevant to the determination of the Trustee's rights and interests.

With respect to the argument that the amendment cannot be applied retrospectively, the Court finds that the constitutional prohibition against laws that are retrospective in operation is dispositive.   Mo. Const. art. 1, §13.   While the statute by its terms would apply to trusts created prior to its effective date, under some circumstances that application would be constitutionally impermissible.   Retrospective laws are generally defined as those which "take away or impair rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past."   *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 340 (Mo. Banc 1993)(citations omitted).   Here, since

---

[3] The Trustee also argued that Kathleen's Trust does not fulfill the statutory criteria to be a qualified

the estate's rights in the Trust assets vested on the petition date, the application of the MUTC amendment would most certainly impair the Trustee's rights that were acquired long before the amendment came into play.   As a result, this Court adopts the Trustee's position that the application of the amendment is prohibited.

## D.  Substantive Issues

### 1.      Debtor's rights as co-trustee, although limited, are property of the estate.

Bankruptcy Code §541(a)(1) defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  It creates a snapshot of the estate at the moment the bankruptcy petition is filed.  *In re Mokina y Vedia*, 150 B.R. 393, 401 (Bankr. S.D. Tex. 1992).  The interest of a bankruptcy estate in a trust under §541(a) is derivative of the debtor's property rights in the trust and in the trust property as determined by applicable state law as of the petition date.  *In re N.S. Garrott & Sons*, 722 F.2d 462, 466 (8th Cir. 1985); *In re Schmidt*, 215 B.R. 417, 421 (9th Cir. B.A.P. 1997).  Any interest which a debtor retains in a trust is property of the estate, including the power to amend the trust and the power to revoke a revocable trust.  *In re Reuter*, 427 B.R. 727, 774 (Bankr. W.D.Mo. 2010)(citing *Askanase v. LivingWell, Inc.,* 45 F.3d 103, 106 (5th Cir. 1995)).  "Thus, what comes into the bankruptcy estate is not only the property in which debtor has an interest, but also, the powers the debtor can exercise for its benefit over property, regardless of the title debtor may be acting under."  *In re Gifford*, 93 B.R. 636, 640 (Bankr. N.D. Ind. 1988). Exactly what interests the Debtor had in the Trusts when he filed for bankruptcy is the crux of the matter before this Court.

---

spousal trust.  Given the Court is ruling on the applicability of the statute, it need not address this question.

The Debtor argues that his rights, claims or interests in or to the Kathleen Trust consist only of powers exercisable for the benefit of other persons or entities within the meaning of §541(b).  The Court assumes that he is referring to one of the enumerated exceptions to property of the estate, namely, "any power that the debtor may exercise *solely* for the benefit of an entity other than the debtor."  11 U.S.C. §541(b)(1) (Emphasis added.)  Article II.A. of the Trusts states that "[t]he trustees shall distribute to me or apply for my benefit such amounts of net income and principal…as the trustees believe desirable from time to time for the health, support in reasonable comfort, best interests, and welfare of [the Debtor or Kathleen] and me…."  It is unmistakable from that language that the Debtor, as co-trustee, has the authority to distribute amounts of net income and principal to or for the benefit of his wife *and* himself.  Accordingly, the Debtor's powers are not exercisable solely for the benefit of someone else.  Therefore, the exception does not apply and the Debtor's rights in that capacity are property of the estate.  The precise value of those rights is not entirely clear.

The introductory sentence of Kathleen's Trust Agreement reads as follows: "I, Kathleen S. Reuter, of Boone County, Missouri, hereby transfer to myself and my spouse, Nathan P. Reuter, as trustees, acting jointly, the property identified in the attached Schedule of Property."  Despite that designation, the plural form, "trustees," is not used consistently throughout the document.  Article VII.A., which presumably describes the powers of both Kathleen and the Debtor, provides that "[t]he trustee shall have the following powers with respect to each trust held under this instrument…."  This ambiguity is resolved in the Missouri Uniform Trust Code ("MUTC"), Mo. Rev. Stat. §§456.1-101 – 456.11-1106.  According to the definition in §456.1-

19

103(29), the term "Trustee" includes "an original, additional, and successor trustee, and a *cotrustee*." (Emphasis added.)  Thus, the Debtor has the delineated powers.

Those powers, however, are not unrestricted.  A co-trustee must act by majority decision. MUTC §456.7-703.1. Thus, the Debtor does not have the authority to carry out an action as a trustee under the Trusts without Kathleen's consent.[4]  As a result, while the Trustee succeeds to the Debtor's powers in theory, she cannot exercise them in her discretion; her rights as co-trustee are limited to the extent they are subject to Kathleen's consent.

## 2.        Debtor's rights as beneficiary are not property of the estate.

A beneficiary's interest in a trust subject to the trustee's discretion is not an interest in property.  MUTC §456.5-504.1.  The interest is discretionary if it is not a distribution of income or principal which the trustee is required to make to a beneficiary under the terms of the trust, including a distribution upon termination of the trust.   MUTC §456.5-504.4, citing MUTC §456.5-506.1.  This applies whether or not there is a spendthrift provision.  MUTC §456.5-504.3. It also applies in a bankruptcy context.   The Missouri Comment to §456.5-504 explains that "[t]he 2006 Technical Corrections completely rewrote subsection 1 of this section to clearly restate Missouri law as it existed prior to January 1, 2005 that discretionary interests in trusts are not property for any purpose, including bankruptcy, dissolution of marriage, Medicaid claims, or any other claims of creditors or others."

The Trusts are indisputably discretionary.  Article II.A. of the Kathleen Trust provides that "[t]he trustees shall distribute to me or apply for my benefit such amounts of net income and principal…as the trustees believe desirable from time to time for the health, support in

reasonable comfort, best interests, and welfare of Nathan P. Reuter ('my spouse') and me, considering all circumstances and factors deemed pertinent by the trustees." Therefore, §456.5-504 is dispositive and the Debtor's beneficiary interest in the Trusts is not property of the estate.[5]

### 3.       Debtor does not have the right to revoke the Kathleen Trust.

Unless the terms of a trust expressly provide that it is irrevocable, the settlor may revoke the trust. MUTC §456.6-602.1. If a revocable trust is funded by more than one settlor, each settlor can revoke the trust with regard to the portion of the trust property attributable to that settlor's contribution. MUTC §456.602.2(2). With respect to the Debtor's Trust, Article X.B. provides that the Debtor has the exclusive right to amend or revoke it, and to withdraw any or all of the Trust assets. In an Order dated April 14, 2010, this Court overruled the Trustee's objection to the Debtor's claimed exemption in the assets in his Trust (*i.e.*, insurance policies). Accordingly, while the Trustee succeeds to the Debtor's right to revoke and to withdraw the Trust assets, the insurance policies remain exempt, and are therefore not property of the estate. In terms of any other Trust assets, the Court cannot make a determination as to the Debtor's interest since a formal accounting has not been undertaken.

The determination of whether the Debtor has the right to revoke the Kathleen Trust turns on whether the Debtor is a settlor of that Trust. The Debtor and Kathleen maintain that the former is not a settlor; the Trustee maintains that he is. Interestingly, both parties rely, in part, on the statutory definition to make their case:

---

[4] The Court notes that the Kathleen Trust provides that under certain circumstances (*e.g.,* upon Kathleen's death), the Debtor has the sole authority to pay certain obligations and to make distributions to their descendants.

[5] However, pursuant to MUTC §456.5-504.2, the Trustee succeeds to the Debtor's right to sue Kathleen for an abuse of discretion or for failure to make a distribution, if such a claim exists.

> 'Settlor' means a person…who creates, or contributes property to, a trust. If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution except to the extent another person has the power to revoke or withdraw that portion pursuant to the terms of the trust.

MUTC §456.1-103(23).

The Trustee makes several arguments to support her position.  At the outset, she leaps directly from the Debtor's contribution of Trust assets to his settlor status.  This approach begins and ends with the first sentence of the definition – the Debtor contributed assets to the Trust so he must be a settlor.  The Trustee disregards the second sentence of the definition which unequivocally modifies the first and as a result, narrows the definition.   Here, Kathleen expressly reserves the right to revoke under Article X.B. of her Trust:  "I reserve the right from time to time during my life, by written instrument delivered to the trustee, to amend or revoke this instrument in whole or in part and the right to withdraw any or all of the assets of the trust at any time…." There is no such provision conferring that right on the Debtor.   Additionally, Article VII of the Trust enumerates the powers exercisable in the trustee's (and by operation of law, the co-trustee's) discretion, including the powers to make investments, distribute trust property, and pay administrative expenses.   The right to revoke is not among them.   Since Kathleen has the sole power to revoke or withdraw the portion of the Trust property contributed by the Debtor, the Debtor is not a settlor as that term is defined under Missouri law.

The Trustee cites *Barry v. Barry*, 579 S.W.2d 136 (Mo. App. E.D. 1979), to make the same simplistic argument.   Specifically, she relies on the court's statement that, since the

husband and wife contributed assets to the trust, "in substance both may be considered to be settlors."     *Id.* at 139 (citing Restatement (Second) of Trusts, ch.2, §§ 17-23).  As this Court noted previously, a contribution to a trust does not a settlor make.  The *Barry* case was decided long before the MUTC was adopted so there is no reference to the statutory definition of "settlor."  Additionally, the issues and facts in that case were dissimilar to those at hand: whether the trustee had a fiduciary duty to reconvey title to beneficiaries upon the trust's termination, whether the divorce decree operated to divest the wife of any interest she may have had in the trust assets, and whether she made a prima facie case for an accounting.  In other words, in addition to having been made before, and thus without reference to, the MUTC, the statement is dicta.  The Court is not persuaded by *Barry*.

The Trustee also asserts that the word "another" in the second sentence of the statutory definition refers to a third party rather than to the trust's co-creator, citing the dictionary definition.  Based on a commonsense principle of grammar, this argument fails.  The so-called "last antecedent canon" is that a pronoun generally refers to the nearest reasonable antecedent.  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 144 (Karen Maguson et al. eds., 1st ed. 2012).   Applying the rule in this context, "another" must refer to the other person who contributes property to a trust.  That is the nearest antecedent in the statutory definition, and the only reasonable conclusion that can be drawn.

The Trustee asserts further that the purpose of this limitation is described in an example given in the Comments to UTC §103, that is, the case of a revocable trust used as a will substitute.  A donor to such a trust, like a parent who contributes to a child's revocable trust, would not be treated as a settlor because the child has the power of withdrawal over the trust.

23

She suggests the exception in the definition is limited to this situation. While the Court recognizes that this is *one* illustration of the exception to the definition of "settlor," nothing in the statute states or even implies that it is the *only* example. Accepting the Trustee's argument would be tantamount to limiting the definition of "settlor" in contravention of the plain language of the statute, and this the Court is not willing to do. This conclusion makes sense as a matter of policy. If the person contributing assets to a trust retains the right to withdraw them, they should not be treated as beyond the reach of creditors. On the other hand, if that right resides solely in another, control has been surrendered and the assets should not be reachable.

In addition, the Trustee argues that the Debtor has the right to revoke pursuant to MUTC §§456.6-602.1 and .2:

> Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust. …If a revocable trust is created or funded by more than one settlor: (1) to the extent the trust consists of community property, the trust may be revoked by either spouse acting alone but may be amended only by joint action of both spouses; and (2) to the extent the trust consists of property other than community property, each settlor may revoke or amend the trust with regard to the portion of the trust property attributable to that settlor's contribution.

As to the first clause, the Trustee's argument has no merit because Missouri is not a community property state. Her protestation to the contrary notwithstanding, the use of the phrase "community property" is not a drafting error based on a failure to delete an inapplicable provision of a uniform statute or meant to be equivalent to "marital property." According to the Comment to Uniform Trust Code §602 (from which MUTC §456.6-602 is adopted), "[t]he purpose of this provision, and the reason for the use of joint trusts in community property states, is to preserve the community character of property transferred to the trust. While community

24

property does not prevail in a majority of states, contributions of community property to trusts created in noncommunity property states does [sic] occur.  This is due to the mobility of settlors, and the fact that community property retains its community character when a couple moves from a community to a noncommunity state."  Here, the preservation of the community character of Trust property is not an issue since the Debtor and his wife were residents of Missouri, a noncommunity property state, when they created the Trusts and transferred the Trust assets. Thus, the Trustee's argument is based on a provision that is inapplicable.  Furthermore, the Trustee's presupposes that the terms "marital property" and "community property" are interchangeable.  That is simply erroneous.  The language of the statute is unambiguous and the legislative history is clear – the purpose of §456.6-602 is to address the characterization of community property transferred to a trust, not to confer the power to revoke on a person contributing marital property to a trust.

Finally, the Trustee contends that the Debtor gains the right to revoke the Kathleen Trust if he divorces her, and therefore, he is a settlor.  *See* §456.6-603 (a settlor is presumed to have the power of withdrawal).  She posits that the Debtor has reserved to himself, under the Interspousal Agreement dated September 16, 2005, a presently exercisable power to withdraw assets by divorcing Kathleen.  The Trustee's argument fails for a number of reasons.  In the first place, the Trustee misinterprets the Interspousal Agreement.  The only mention of "divorce" is in connection with retaining the classification of property contributed to the Trusts as marital or non-marital. There is nothing in the Agreement about a power to revoke in that instance.

Even if the Debtor is able to withdraw certain assets in the event that he and Kathleen divorce, that power does not meet the statutory requirement.  The "power of withdrawal" is

defined in MUTC §456.1-103(16) as a "presently exercisable power of a beneficiary to withdraw assets from the trust without the consent of the trustee or any other person." The Debtor's ability to withdraw trust assets would hinge on his right to obtain a divorce, a right that is not automatic in Missouri. The petitioning spouse is required to prove the statutory elements set forth in Mo. Rev. Stat. §452.320 before the trial court. Then, the determination of what portion of the marital assets should be distributed to whom is subject to the trial court's discretion after examining all relevant factors. This Court, therefore, adopts Kathleen's position: "Debtor's ability to cause a distribution of the assets to himself by divorcing Kathy can only be exercised in conjunction with Kathy and the state court trial judge's discretion so that Debtor's right is not a power of withdrawal under §456.1-103(16)." It follows that without that power, the Debtor does not have the rights of a settlor as set forth in §456.6-603.4.

Besides arguing that the statutory definition of "settlor" is dispositive, the Debtor and Kathleen cite *In re Quaid,* 2011 WL5572605 (M.D. Fla. 2011), to support their position that the Debtor is not a settlor.[6]  In that case, the debtor and his wife withdrew all of the funds they held in an account as tenants by the entirety, and transferred them to a trust previously established by the debtor's wife. The trust contained a spendthrift provision. The debtor claimed that his interest in the trust was protected from creditors and excluded from the estate. The bankruptcy court disagreed. The district court began its analysis with the applicable state law: a spendthrift provision is inapplicable to assets in a self-settled trust. The court concluded that the debtor was not a settlor, despite contributing assets to the trust. His wife had the sole power to revoke or

---

[6] Although *Quaid* is a Florida case applying state law, the statutory definition of "settlor" was adopted from the Uniform Trust Code and is identical to the one in the MUTC.

withdraw any trust assets, including the amounts contributed by the debtor. Thus, his beneficial interest was protected from his creditors by the spendthrift provision.

The *Quaid* case is factually similar to this one and compelling. Moreover, contrary to the Trustee's assertion, the statutory definition of "settlor" is controlling. For the reasons stated above, the Court concludes that the Debtor is not a settlor of the Kathleen Trust and does not have the right to revoke that Trust.

### 4.     The Trusts contain a valid spendthrift provision.

In general, an interest of a debtor in property becomes property of the estate notwithstanding any provision in an agreement that restricts or conditions transfer of such interest by the debtor. 11 U.S.C. §541(c)(1). However, a restriction on the transfer of a beneficial interest of a debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a bankruptcy case. 11 U.S.C. §541(c)(2). Therefore, as long as the spendthrift trust is enforceable under Missouri law, the trust assets are protected from the reach of a debtor's creditors.

With a few exceptions not applicable here, Missouri recognizes spendthrift trust provisions as valid and enforceable. *In re Davis*, 125 B.R. 242, 244 (Bankr. W.D. Mo. 1991). Under Missouri law, "[a] spendthrift provision is valid if it restrains either the voluntary or involuntary transfer or both the voluntary and involuntary transfer of a beneficiary's interest." MUTC §456.5-502.1. If there is a valid spendthrift provision, "a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee before its receipt by the

beneficiary."  MUTC §456.5-502.3.[7]  The spendthrift provision in question is set forth in Article VI. D. of the Trusts:  "Except as otherwise provided by law, no power of appointment or power of withdrawal shall be subject to involuntary exercise, and no interest of any beneficiary shall be subject to …involuntary transfer in any event."

The evolution of the MUTC is significant.  Missouri enacted the Missouri Trust Code ("MTC") in 1983.  Section 456.080.3 of the MTC appeared to allow asset protection trusts:  "A provision restraining the voluntary or involuntary transfer of beneficial interests in a trust will prevent the settlor's creditors from satisfying claims from the trust assets…."[8]  Despite the language apparently allowing spendthrift trusts under the MTC provision, Missouri courts ignored the plain meaning of the statute, and a series of cases concluded that §456.080.3 did not protect a settlor's interest in a spendthrift trust under certain circumstances.[9]  *See, e.g., In re Markmueller*, 51 F. 3d 775 (8th Cir. 1995); *In re Edelmann*, 308 B.R. 398 (Bankr. E.D. Mo. 2004); *In re Walters*, 172 B.R. 283 (Bankr. W.D. Mo. 1994); *In re Enfield*, 133 B.R. 515 (Bankr. W.D. Mo. 1991).  The Court will address these cases in more detail below.

The Missouri Uniform Trust Code became effective on January 1, 2005, and provides a detailed statutory framework covering most of the asset protection issues surrounding trusts.

---

[7] Although not raised by the Trustee, Kathleen notes that MUTC §456.5-505.1 provides that "[w]hether or not the terms of a trust contain a spendthrift provision, during the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors." She argues that this provision is inapplicable because the Debtor is not a settlor and because her Trust (though titled "Revocable Trust") is irrevocable as to the Debtor.  Because it has concluded that the Debtor is not a settlor, the Court agrees that this provision is not relevant to the issues before it.

[8] Compare to MUTC §456.5-505.3 which states:  "With respect to an irrevocable trust with a spendthrift provision, a spendthrift provision will prevent the settlor's creditors from satisfying claims from the trust assets…."

[9] "In each of these cases the decision was based on grounds other than the inapplicability of Section 456.080.3, and statements in those cases as to its lack of protection seem to be dicta."   4C Francis M. Hanna,

Keith A. Herman, *Asset Protection Under the New Missouri Uniform Trust Code*, 62 J. Mo. B. 196 (2006).   The drafting subcommittee made it clear that the previous line of cases erred by commenting, "'To the extent that those cases hold that section 456.080(3) does not protect a settlor's interests in a trust that fits within the statutory protection, those cases are incorrect and ignore the plain language of the statute.'   ...Those courts previously failing to apply the plain meaning of the statute because of the strong common law prohibition against self-settled spendthrift trusts now have no choice but to follow the clear intent of the Missouri Legislature." Joseph E. Hershewe, *Missouri Asset Protection Trusts:  Debunking the Vulnerability Myth and a Call for Uniformity*, 79 UMKC L. Rev. 212, 215 (2010-2011)(citations omitted).

Nevertheless, the Trustee argued that "whether a trust protects a debtor's assets from a creditor depends in part on the debtor's 'degree of control over trust assets.' " (citing *In re Markmueller*, *supra)*. She stated further that "Bankruptcy Courts in this district have included trust assets in the estate where the beneficiary has dominion or control over the trust."  (citing *In re Davis*, 125 B.R. at 245); *In re Gallagher*, 101 B.R. 594, 600 (Bankr. W.D. Mo. 1989)(citing *In re Swanson*, 873 F.2d 1121 (8th Cir. 1989)).   The Trustee recognized that the cases to which she referred most often involved the right of an employee to take a distribution from a retirement trust upon termination of employment, and that they are no longer applicable to retirement trusts due to a 1992 statutory amendment.  She takes the position, however, that the line of cases is still controlling law concerning a beneficiary's dominion and control over distributions in other settings.

---

Missouri Practice Series §456.505 (2008 ed.)(citations omitted).

For example, the Trustee relies on the leading case on this issue, *In re Markmueller*, *supra*. The debtor in *Markmueller* was a co-settlor with his wife of a trust in which they named themselves as co-trustees and beneficiaries. It is important to note that, unlike the Debtor in the present case, the one in *Markmueller* had the right to revoke, alter, or amend the trust. When his wife died, the debtor became the sole trustee and beneficiary. The debtor filed for bankruptcy and claimed that his interest in the trust was excludable from the bankruptcy estate as an enforceable spendthrift trust. The trustee argued that the trust assets were property of the estate because the spendthrift provision was invalid under Missouri law. The bankruptcy court agreed, and ordered the debtor to turn over the assets. The district court affirmed, finding that the spendthrift provision was invalid because the debtor impermissibly exercised dominion and control over the trust assets. The Eighth Circuit invalidated the provision on two grounds: 1) the debtor had the right to revoke, alter or amend the trust, and 2) the debtor, as trustee, had absolute control over the management and use of the trust estate for any purpose, thus exercising an impermissible degree of control over the trust assets. *Id.* at 776-77. *See also In re Davis*, *supra* (ESOP plan was invalid spendthrift trust under Missouri law where debtor, as employee and beneficiary, was entitled to vote her shares, receive a lump sum payment upon her termination of employment, make contributions and withdrawals, and receive loans).

The Trustee also cites *In re Edelmann*, *supra*, for the proposition that the fact that the Debtor does not have the power to revoke the Trust is immaterial. In *Edelmann*, the debtor and his wife established a trust and transferred assets into it. The proceeds generated by the trust were to be used by both of them as beneficiaries. Both exercised complete control over the trust assets. The debtor, however, could only revoke the trust with his wife's consent. The court

concluded that the self-settled trust was not a valid spendthrift trust under Missouri law, and added that "[t]he mere fact that Debtor cannot solely revoke the Trust is irrelevant given the potential for abuse." *Id*. at 402.

Like the *Markmueller* and *Edelmann* cases, this case involves a husband and wife who contributed property to Trusts, who were beneficiaries of those Trusts, and who exercised a certain degree of control over the distribution of Trust assets.   However, those cases are distinguishable insofar as the debtors exercised control over the assets, including their right to revoke the respective trusts, pursuant to provisions in the trust documents themselves.   The Kathleen Trust does not provide the Debtor with the right to revoke it, with or without Kathleen's consent.   Additionally, *Markmueller* and *Edelmann* were decided prior to the MUTC amendments that validated spendthrift trusts and abrogated the line of cases holding that the exercise of dominion and control was sufficient grounds to  bring the trust assets into the estate. The subcommittee of the Probate Section of the Missouri Bar responsible for the drafting of §456.5-505 addressed these contrary cases, including *Markmueller*, that were decided under the predecessor section this way:

> In each of these cases the decision was based on grounds other than the inapplicability of Section 456.080.3, and statements in those cases as to its lack of protection seem to be dicta. …To the extent that those cases hold that Section 456.080.3 does not protect a settlor's interest in a trust that fits within the statutory protection, those cases are incorrect and ignore the plain language of the statute….The incorporation and reenactment of a spendthrift clause in Section 456.5-503 is intended to overrule any holding that would render that portion of the statute meaningless.

4C Mo. Prac., Trust Code & Law Manual §456.5-505 (2012).

The Trustee is essentially asking the Court to create a non-statutory right in favor of creditors despite the statutory language and the legislative history validating spendthrift trusts in Missouri. For the reasons articulated above, the Court refuses to do so, and rejects the Trustee's argument that a spendthrift provision can be invalidated due to the debtor's excessive dominion and control over the trust assets.

Furthermore, although the Trust instruments give the Debtor broad powers, his authority is not without restraint.  As previously stated, §456.7-703.1 mandates that co-trustees act by majority decision. One of the very purposes of appointing co-trustees is to serve as a safeguard against misconduct.  *See* UTC Comment to §456.7-703.1.  Here, the Debtor and Kathleen are named as co-trustees in the Trust instruments.  In that capacity, the Debtor does not have the power to "exercise control," including making discretionary distributions to himself, without Kathleen's consent. A similar situation existed in the recent case of *In re Felice*, 2013 WL 2897038 (Bankr. D. Mass. 2013). The debtor in *Felice* served as co-trustee with his wife under the terms of a realty trust and family trust. The instruments contained a spendthrift clause. The debtor had the power to change the beneficiaries and adjust the extent of their interests, among others. The bankruptcy trustee argued the debtor's interest in the trusts were property of the estate because the debtor's control over the trusts' assets rendered the spendthrift clause unenforceable.  Recognizing that the debtor could not act on behalf of the trust without the consent of his wife (co-trustee), the court rejected the trustee's position and ruled that the assets were not property of the bankruptcy estate:  "Notwithstanding these extensive powers, [the debtor] is not the sole trustee of the Family Trust, and for that reason he lacks the pervasive

control over the trusts that would be necessary for me to conclude that Mandalay Drive is property of his bankruptcy estate." *Id.* at *14.

Based on the legislative history of the relevant MUTC provisions, the plain language of the statute, and its policy favoring access to estate planning benefits, the Court finds that the spendthrift provision in each of the Trusts is valid under Missouri law.  The Court notes that creditors are not without a remedy under the MUTC.  Section 456.5-505.3(1) provides an exception to the protection of a spendthrift provision "[w]here the conveyance of assets to the trust was fraudulent as to creditors pursuant to the provisions of  Chapter 428, RSMo" (the Uniform Fraudulent Transfer Act).  In the present case, neither the creditors nor the Trustee asserted a fraudulent conveyance cause of action, or it was not available to them, so the exception does not apply.

### 5.       The Court is not authorized to grant the equitable relief sought.

The Trustee conceded that if the Court concludes that the Debtor does not have the right to revoke and is not a settlor, then his creditors cannot reach the Trust assets.  However, she contends that the Court can exercise its equitable power to, in essence, override the Missouri trust statute.  The Court disagrees.

The only authority on which the Trustee bases her argument is §456.1-105.2(13) -- "The terms of a trust prevail over any provision of sections 456.1-101 to 456.11-1106 except:  the power of the court to take such action and exercise such jurisdiction as may be necessary in the interests of justice." It is evident that the Trustee, in a last-ditch effort to by-pass the trust statutes, is asking the Court to use its "equitable powers" to expand the rights of the Debtor's creditors. The provision on which she relies, however, does not apply.  Section §456.1-105.2(13)

addresses the situation where there is a conflict between the terms of a trust and the MUTC. Such is not the case here.  The Trusts comply with the requirements of the MUTC and the MUTC covers the issues presented in this case.  Furthermore, nothing in the legislative history of §456.1-105.2(13) indicates that the Court's authority extends that far.  The only reference to it in the UTC Comment is this:  "The terms of a trust may not deny a court authority to take such action as necessary in the interests of justice, including requiring that a trustee furnish bond." Imposing such a requirement on a trustee can hardly be put in the same category as the action requested by this Trustee, *i.e.,* to invalidate the Trusts' spendthrift provision and permit the Debtor's creditors to reach the Trust assets.

The MUTC is detailed and comprehensive.  It governs the duties and powers of a trustee, relations among trustees, and the rights and interests of beneficiaries and creditors.  §456.1-105.1.  The Table of Contents reveals that, besides having an extensive list of definitions, the statute covers a broad range of conceivable issues – from settlement agreements and venue to trust modifications and compensation.  Most importantly, it also covers the rights of creditors to reach trust assets.  The statute codifies those portions of the law of express trusts that are most amenable to codification, and the common law of trusts and principles of equity supplement it. §456.1-106 and Comment to §456.1-106.  The Trustee made no showing that the circumstances presented in this case are "not amenable to codification."

The Debtor made the point that there is a significant difference between *supplementing* Missouri trust law and *supplanting*  it or eviscerating it.  As the court stated in *Wachovia Bank, N.A. v. Levin*, 419 B.R. 297, 304 (E.D.N.C. 2009), a court's equitable powers are not unlimited:

34

> Although the Bankruptcy Court's frustration is understandable, such equitable considerations may not supplant the Bankruptcy Code and Pennsylvania's spendthrift law, which require the exclusion of [the debtor's] remainder interests in the 1976 Trust and Will Trust from his bankruptcy estate.

The terms of these Trusts are not ambiguous nor are the circumstances unique.  Thus, this Court concludes that it is not appropriate to exercise its authority and override the provisions of the MUTC.

**6.      The alter ego doctrine cannot be applied.**

Plaintiff urges the Court to extend the "alter ego doctrine" to trusts or establish new bankruptcy law and pierce the Kathleen Trust so that it can be equitably disregarded and its assets be made available to the estate.  Defendants contend the Trustee lacks standing to assert such a claim and even if she does, it has not been properly pled.

Some courts have extended the doctrine to apply to trusts, as well as corporations.  In *F.P.P. Enterprises v. United States*, 830 F.2d 114, 118 (8th Cir. 1987)**,** the court affirmed the lower court's finding that the trusts at issue were shells acting as alter egos for the taxpayers and therefore were not separate persons from the taxpayers.  (quoting "[p]roperty held in the name of an entity which is the alter ego of a taxpayer may be levied on to satisfy the tax liabilities of the taxpayer."  *Loving Saviour Church v. United States*, 728 F.2d 1085 (8th Cir. 1984)); *see also, Dean v. United States*, 987 F.Supp. 1160, 1165 (W.D. Mo. 1997) (assuming the state court would apply the same piercing standard applied in the corporate context to trusts).  Application of the doctrine to trusts may be problematic given that under Missouri law a trust is not considered an entity.  Nonetheless, and while the Missouri courts have not ruled on the issue, there is, as indicated above, precedent in this district for the application of the doctrine to trusts.

35

Accordingly, for present purposes, the Court will assume the alter ego doctrine might be

employed to disregard the trust.

> The alter ego doctrine is typically brought when attempting to pierce a corporate veil:

> > It fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business, and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation.  The corporate form may be disregarded only where equity requires the action to assist a third party.

*In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222, 1225 (8th Cir. 1987).  The *Ozark* court

went on to hold that because the nature of the alter ego theory of piercing the corporate veil makes

it one personal to the corporate creditors rather than the corporation itself, the claim does not

become property of the estate, nor is it enforceable by the trustee.  *Id.*  There are, however,

exceptions.  For example: is this a creditor specific claim or a general one? Some cases suggest

that in the latter case the trustee has standing.  *See, e.g., In re Yerushalmi*, 2012 WL 5839938

(Bankr. E.D.N.Y. 2012); *In re Mar Kay Plastics, Inc.*, 234 B.R. 473 (Bankr. W.D. Mo. 1999); *In*

*re Inland Shoe Manf. Co., Inc.*, 90 B.R. 981 (Bankr. E.D. Mo. 1988).  Another question raised is

whether the claim is tied to specific assets and thus an exception to the *Ozark* doctrine.  *See, e.g.,*

*In re Americana Services, Inc.*, 173 B.R. 650 (Bankr. W.D. Mo. 1994); *In re Bridge Info. Systems,*

*Inc.*, 344 B.R. 587 (E.D. Mo. 2006).  Also at issue is whether this type of piercing of the trust is

actually "reverse piercing" and, if so, whether that makes a difference.  Several courts have

suggested that a trustee does have standing to assert a "reverse piercing" claim.  *See, e.g., Mar*

*Kay Plastics,* 234 B.R. at 480 (citing *In re Mass*, 178 B.R. 626 (M.D. Pa. 1995); *In re Schuster*,

132 B.R. 604 (Bankr. D. Minn. 1991)).

36

It appears that state law controls the question of alter ego. *See Aquilino v. United States*, 363 U.S. 509, 513 (1960). Missouri courts have applied the doctrine in the corporate context and use a three-part test. "An individual will be deemed to be the alter ego of a corporation when: (1) the individual completely dominates and controls the finances, policy and business practice of the other corporation; (2) such control was for an improper purpose such as 'fraud or wrong, or...unjust act in contravention of [a third parties'] legal rights;' (3) The alter ego's control of the corporation caused injury to the third party." *Dean*, 987 F.Supp. at 1164 (citations omitted). In the trust context, "Missouri law would require a showing that the alter ego of the trust so dominated it that the trust had 'no separate mind, will or existence of its own.'" *Id.* at 1165.

It is also unnecessary for the Court to determine if the Trustee has standing to assert the claim in this instance as Plaintiff has not properly pled the elements of an alter ego claim. She argues in her brief that whether the Kathleen Trust is the alter ego of Debtor is a factual question raised in the Complaint in paragraph 16 which alleges, "Both before and after the filing of the underlying bankruptcy, Debtor exercised rights as trustee under the Kathleen Reuter Trust in his sole discretion for his benefit." This allegation fails to plead the necessary elements that such control was for an improper purpose and that it caused injury to a third party.

Arguably, the Trustee could move to amend the Complaint and add the necessary allegations to meet the alter ego elements and does propose amended allegations in her opposition to Kathleen's motion. Document No. 30, pp. 29-30. However, the Court finds that this would be futile. *See, e.g., LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1104 (6th Cir. 1995) (grant or denial of motion for leave to amend, made pursuant to Rule 15(a) in response to motion to dismiss, was reviewed according to usual Rule 15(a) standards, and " '[d]enial of [leave

to amend] [was] not an abuse of discretion where "[t]he infirmities of the original complaint [were] not dissipated by the amended complaint," ' " (quoting *Hamilton v. Bean,* 745 F.2d 1034, 1036 (6th Cir. 1984)); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2nd Cir. 1995) (request for leave to amend in Rule 59(e) motion following dismissal for failure to state a claim was properly denied, because "[o]ne good reason to deny leave to amend is when such leave would be futile," and district court correctly concluded the proffered amendment was futile).  Amendment of the complaint as proposed by the Trustee would still fail to state a claim.  Allegations of control over a trust alone are not enough to pierce such trust and the Trustee's proposed amendment makes no allegation of wrongdoing or harm caused by such action. *See Dean*, 987 F.Supp. at 1164.

Further, even if the Trustee's proposed amendments encompassed all the elements of a claim under the alter ego doctrine, the Court would not be inclined to apply it here.  The Trustee does not cite anything to support the argument to pierce the Kathleen Trust other than the ability of the Debtor to do what the statute allows him to do. The alter ego doctrine is an equitable remedy and, as discussed above, the Court is unwilling, under these circumstances, to exercise its equitable powers to override the provisions of the trust statutes that the Missouri legislature codified regarding trusts and creditor access to their assets.  To invalidate the Trust and let the estate reach the assets in this situation would be to rewrite the statutes and engraft new provisions on them authorizing creditor access to trust assets when the legislature has already addressed that issue.

### III.  CONCLUSION

For the sake of clarity and completeness, the Court summarizes its holdings as follows. Based upon the most recent Eighth Circuit precedent and this Court's own prior holding, it

38

concludes that it is a "court of the United States" and may entertain declaratory judgment proceedings.  The Federal Rules of Bankruptcy Procedure specifically recognize that and provide an appropriate procedural framework for such proceedings.  Notwithstanding the Supreme Court's recent ruling in *Stern*, this Court has the power to enter a final order of declaratory judgment and turnover in a proceeding of the kind at issue here.

The Court declines the invitation to abstain.  Among other things, there is no pending proceeding in favor of which to abstain.  An examination of the factors that this Court has traditionally employed to determine whether to abstain weighs against doing so.  This is not a fraudulent transfer proceeding, Debtor's protestations to the contrary notwithstanding, and because the Court may enter a final order there is no waste of time or resources involved in adjudicating the matter.

For the same reason, the action is not barred by any applicable statute of limitations, nor by the so-called concurrent remedy doctrine.  The Trustee seeks not to avoid a transfer of assets, but specifically to determine parties' rights in the Trusts given the transfers made and documents executed.  The claims for turnover and accounting are causes of actions distinct from a claim to avoid fraudulent transfers, not just different remedies for the same underlying claim.  No statute of limitations applies to a declaratory judgment or turnover proceeding.

The state law cited by Debtor with respect to the requirements for asserting a claim for accounting is inapplicable as the claim is made under federal law, particularly § 542 which specifically authorizes accounting as relief ancillary to a turnover proceeding.  Finally, while it may be true that a turnover proceeding is not an appropriate vehicle for resolving disputes with regard to the status of property, in this case that determination is made as a part of Plaintiff's

39

claim for declaratory relief with the turnover remedy as ancillary to the Court's ruling on that claim.

To the extent that the Court's ruling authorizes the Trustee to exercise control over assets that may be in the Nathan Trust, it does not conflict with any prior ruling made by this Court. The Court recognizes that it has previously ruled that certain specified insurance policies in that Trust are exempt by having overruled the Trustee's objection to that claim of exemption. Nothing more than that was done, however. Accordingly, if there are additional assets in that Trust, the Court's prior ruling with respect to exemption rights is inapplicable. The Court rejects the Debtor's contention that the assets in that Trust (or any other assets) may be exempt by reason of legislation enacted in Missouri in 2011 with regard to the status of tenancy by the entirety property transferred into qualified spousal trusts. This Court previously ruled that the exempt status of such property is destroyed as a result of the transfer. Although the legislation changes that rule and purports to apply to trusts created prior to the effective date of the legislation, it is not applicable here for two reasons. First, the Court is to apply the law existing on the date of the filing of the petition in determining what constitutes property of the estate and what is available for the Debtor to claim as exempt. Secondly, application of the statute to bar the Plaintiff's rights in this case would be an impermissible retroactive application given the rights of the estate that intervened upon the filing of the petition, prior to the enactment of the statute.

The Debtor has rights in the Trusts as a co-trustee, a beneficiary and potentially as a settlor. The Debtor's right and powers in the Trusts are property of the estate unless something excludes them. The Debtor is a co-trustee of each Trust and shares those powers with Kathleen. The Debtor's argument to the contrary notwithstanding , nothing excludes those powers from

40

being considered property of the estate.  Section 541(b)(1) is inapplicable because the Debtor's

rights as co-trustee are not exercisable solely for the benefit of someone other than the Debtor.

Such rights and powers are, however, subject to whatever restrictions are imposed on them by the

trust instruments and other applicable law.  The Debtor's beneficial interests in the Trusts are not

property of the estate as distributions to the Debtor are discretionary.  According to the MUTC,

such interests are not property interests of the Debtor and therefore cannot become property of the

estate.

The Court concludes that the Debtor is not a settlor, applying the definition contained in

the MUTC.  Although he was (arguably) one of two people contributing property to the Trusts,

those instruments vest another person (Kathleen) with the sole power to revoke.  Under these

circumstances, he is not a settler pursuant to the definition.  Neither does he have a right to

revoke, because he is not a settlor and the property in question is not community property.  The

Court rejects Plaintiff's effort to characterize the statute as involving merely marital property.  In

addition, the Debtor lacks any immediately exercisable right to withdraw assets.  Plaintiff's

contention that Debtor's power to divorce Kathleen grants him the power of withdrawal is

rejected because it is not immediately exercisable and is dependent upon the discretion of others,

including a state court judge in a dissolution proceeding.  Finally, the Trusts contain a spendthrift

clause which is enforceable under Missouri law.  The cases cited by Plaintiff which purport to

invalidate them if the Debtor exercises a certain degree of control over the Kathleen Trust were

effectively overruled by the MUTC.

Finally, the Court is not inclined, for various reasons to utilize any equitable powers to

permit the estate to gain access to the Trust assets.  Certain provisions of the MUTC cited by the

Plaintiff in support of these contentions are either inapplicable or simply do not authorize relief of the kind sought.  While it is true that the MUTC says that its principles can be supplemented by general principles of equity, the result Plaintiff advocates would require the Court not merely to supplement those provisions but rather to supplant them or, more accurately to eviscerate the MUTC's carefully drafted limitations on creditor access to trust assets.

In particular, the Court rejects the Trustee's argument that the alter ego doctrine can be used to sweep the assets into the estate.  The Court elects not to decide definitively whether the doctrine would be applicable to trusts as it is to corporations and whether Plaintiff has standing under the circumstances of this case.  Even if those things are true, the Court concludes that the Complaint does not state a claim for relief under the theory as articulated by the Missouri Courts. The ability to, or exercise of, control is alone insufficient to apply the doctrine.  While the Trustee requests the Court grant her leave to amend the complaint, the specific additional allegations she proposes to include in an amended complaint would not remedy the defect.  Accordingly, the grant of leave to amend would be futile.  Finally, even if the Trustee has stated or would state a cause of action under the proposed amendment, the Court does not consider it appropriate to apply this equitable doctrine to circumvent the provisions of the MUTC regarding the circumstances under which creditors can invalidate limitations on their access to trust assets.

For these reasons, the Court grants the Motions to dismiss in part and denies them in part. The Motions are granted insofar as the Complaint seeks a determination that the Debtor's beneficial interest in the Trusts is property of the estate, that the spendthrift clauses in the Trusts are invalid and that the Debtor has a right to revoke the Kathleen Trust or to withdraw assets from the Trusts that may be exercised by her.  The Motions are denied to the extent the Complaint

purports to state a claim that the Debtor's rights as co-trustee may be exercised by the Trustee, but

subject to the observation that such rights are limited by the Trust provisions and applicable

Missouri law.

DATED: _____September 12, 2013_____        _____/s/ Dennis R. Dow

                                               HONORABLE DENNIS R. DOW
                                               UNITED STATES BANKRUPTCY JUDGE

Copies to:
James F. B. Daniels
David G. Brown